UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HUGO HERNANDEZ, GINA DAVIS, and WILLIAM WHITE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFIC MARKET INTERNATIONAL, LLC; PMI WW BRANDS, LLC; AND THE HAVI GROUP, L.P.,<br><br>Defendants. | Case No. ____________________<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Hugo Hernandez, Gina Davis, and William White ("Plaintiffs"), by and through undersigned counsel, individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendants Pacific Market International, LLC, PMI WW Brands, LLC, and The HAVI Group L.P., (collectively "Defendants" or "Stanley") and in support alleges, upon information and belief and based on the investigation of counsel, as follows:

## NATURE OF ACTION

1. Stanley is a leading manufacturer and distributor of premium insulated drinkware products, including vacuum bottles, thermos products, and travel mugs marketed for everyday use and outdoor activities. Stanley has built a reputation over many decades as a manufacturer of



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

durable, high-quality thermos products designed for safe transport of hot and cold beverages.

2. For over a century, Stanley has positioned itself to consumers as a trusted source of innovative drinkware solutions that provide durability, reliability, and safety for carrying hot and cold beverages. Stanley markets itself with the slogan "Built for Life," representing that its products "aren't just a warranty – it's how we've always made things. The Classic Legendary Bottle has kept coffee hot since 1913, and it's still going strong."[1] Stanley's brand recognition and reputation for quality are central to its marketing strategy and consumer appeal in the competitive drinkware and thermos industry.

3. Stanley's product offerings include the Stanley Classic bottles and thermoses containing a "clip" handle assembly[2] (the "Product" or "Class Products"), which Stanley represents as premium, durable drinkware solutions designed for safe transport of hot and cold liquids.[3] The Products are sold as the Classic Legendary Bottle, Classic Legendary Thermos, Stanley Classic Vacuum Bottle, and Insulated Water Bottle. All of the Products are designed, manufactured, and sold with the same or substantially similar clip handle assemblies, which are defective as described below.

4. The Products come in various sizes (1–1.5 quarts) and retail for approximately $36.00–$45.00 depending upon the size. The Products are marketed with representations that the "collapsible handle is made for easy grab-and-go" and feature "rugged durability" that "means it's made to go anywhere."[4]

---

[1] https://www.stanley1913.com/pages/sustainability (Last Accessed February 25, 2026).

[2] Sold as Classic Legendary Bottle, Classic Legendary Thermos, Stanley Classic Vacuum Bottle, Insulated Water Bottle.

[3] *See* https://www.stanley1913.com/ (Last Accessed February 25, 2026).

[4] https://www.stanley1913.com/products/classic-legendary-bottle-1-5-qt (Last Accessed May 5, 2026).



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110




5. The Products all contain a latent defect, described in more detail below, that makes them unsuitable for their intended use. More specifically, the Products are defectively designed and/or manufactured such that, under normal and intended use, the handle clip assembly progressively fails, causing the handle to detach suddenly and without warning during use.

6. Expert evaluation revealed that the Products' handle clips are constructed of 3mm wire with a 3.3mm gap at the top. The thinness and material of the clip, coupled with the gap in the connection between the handle and the bottle, allows the clip to continue widening and separating from the canister under reasonable and foreseeable pressure associated with transporting liquid in the thermos (the "Defect").[5] The Defect is concealed beneath other metal components of the handle assembly, rendering it latent and unobservable to consumers during normal inspection at the time of purchase or during routine use.

7. The handle clip assembly is essentially the critical safety component of the Products, allowing consumers to safely carry the filled bottles during transport. When the handle clips fail, the handle detaches from the bottle suddenly and without warning during normal use, causing the entire vacuum bottle to prematurely fail and become unusable.

8. As consumers frequently use the Products to transport hot beverages such as coffee, tea, soup, or other heated liquids, the sudden detachment can cause scalding hot liquid to spill onto

[5] These handles, unlike the handles for the newer Stanley water bottles that are popular among younger consumers, are clipped on, "collapsible" handles for versatility and use. *See* https://www.stanley1913.com/products/classic-legendary-bottle-1-5-qt.



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

the user, resulting in severe burns.[6]

9. The severity of injuries resulting from the Defect is exemplified by an incident that occurred when a man named Xavier Collazo was using his thermos to carry hot liquids. Specifically, on October 14, 2024, Xavier Collazo sustained catastrophic burn injuries when the handle of his Stanley Classic thermos suddenly and without warning detached while filled with boiling water, causing the contents to spill onto his groin area. Mr. Collazo suffered severe burns to his genitals and had to be transported by ambulance to Brooke Army Medical Center in San Antonio, Texas, due to the limitations of local hospitals in treating such severe burn injuries. Mr. Collazo filed a lawsuit against Defendants in King County Superior Court, Washington, on November 3, 2025 (Case No. 25-2-32723-0 SEA), alleging product liability claims and seeking damages for his catastrophic injuries. This lawsuit put Defendants on direct notice of the Defect and the serious safety risks posed by the Products.

10. Stanley has undertaken a deliberate and willful pattern of conduct (including taking active measures) aimed at concealing the Defect from its consumers, including Plaintiffs and Class Members. At all relevant times, Defendants knew or should have known about the Defect but nevertheless marketed, advertised, and sold the Products without disclosing the Defect or warning consumers that the handle assemblies could fail and pose serious safety risks.

11. Based on Defendants' engineering and design knowledge, Defendants have known since the Products were created with 3mm wire handle clips featuring a 3.3mm gap at the top that those clips would be susceptible to progressive failure under ordinary use conditions. Despite this knowledge and expertise, Defendants designed and manufactured the Products with handle clips that were inadequate to safely support the weight of the filled Products during normal, foreseeable use.

12. Defendants' knowledge of the Defect is further evidenced by consumer complaints, warranty claims, and online reviews reporting handle failures during normal use of the Products.

[6] *Collazo v. Pacific Market International, LLC, et al.*, 25-2-32723-0 SEA (King County Superior Court, Washington).



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

Despite knowledge of handle failures causing severe burns and other injuries, Defendants continued to manufacture, market, and sell the Products without disclosure of the Defect or adequate warnings.

13. Defendants fail to disclose the known Defect or to provide consumers with non-defective replacements. Indeed, rather than providing consumers with new, non-defective Products after their units failed as a result of the Defect, Defendants failed to adequately remedy the Defect. When consumers make warranty claims to Defendants regarding handle failures, Defendants mislead and deceive consumers by denying that handle detachment constitutes a defect, attributing failures to consumer misuse rather than design and manufacturing defects, and providing inadequate remedies that do not address the underlying Defect. Some consumers have had their Products replaced, only to receive equally defective replacement units with the same handle clip assembly defect.

14. As a direct and proximate result of Defendants' concealment of the Defect, their failure to warn customers about the Defect before their purchase, and their failure to recall the Products or remedy the Defect, Plaintiffs and similarly situated customers ("Class" or "Class Members") purchased and used Defendants' defective Products when they otherwise would not have made such purchases on the same terms or at all, or would not have paid as much for the defective units.

15. Plaintiffs and putative Class Members' handle assemblies have failed (or are likely to fail) as a result of the Defect when Plaintiffs and Class Members use the Products as intended, resulting in damaged units which are unusable, severe burns and other injuries, and economic losses from overpayment for defective Products.

16. Plaintiff Hugo Hernandez is a resident and citizen of California. He purchased a 1.1 qt Stanley Heritage Classic Vacuum Bottle with Handle from Amazon on April 5, 2022. His Product contains the defective handle assembly described herein, and Plaintiff suffered injuries as a result of the Defect.

17. Plaintiff Gina Davis is a resident and citizen of New Jersey. Plaintiff Davis purchased



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

a Stanley Legendary Classic Bottle from Target two and a half years ago. She has been plagued with issues with the clips and has "fixed" the bottle a number of times with pliers, help from others, etc. but it always comes apart again.

18. Plaintiff William White is a resident and citizen of North Carolina. He purchased a Stanley Legendary Classic Bottle three years ago. He has experienced many issues with the clips on the sides of this bottle.

19. Defendant Pacific Market International, LLC is a Washington limited liability company with its principal place of business in Seattle, Washington. Pacific Market International, LLC designs, manufactures, markets, and distributes the Products at issue throughout the United States, including to Plaintiffs herein.

20. Defendant PMI WW Brands, LLC is a Delaware limited liability company with its principal place of business in Seattle, Washington. PMI WW Brands, LLC is a subsidiary of Pacific Market International, LLC that designs, produces, and markets Stanley 1913 products, including the Products at issue, throughout the United States.

21. Defendant The HAVI Group, L.P. is an Illinois limited partnership with its principal place of business in Downers Grove, Illinois. The HAVI Group, L.P. is the parent company of Pacific Market International, LLC and participated in the distribution and oversight of the product line at issue.

22. At all times relevant herein, Defendants jointly transacted and conducted business throughout the United States.

23. The Defendants are the agents and/or alter egos of each other in the material selections, manufacture, marketing, and distribution of the Products.

24. At all times relevant herein, the Defendants were actual and/or de facto joint ventures in the materials selection, design, development, manufacture, marketing, and sales of the Products.

**<u>JURISDICTION AND VENUE</u>**

25. This Court has subject matter jurisdiction over this action under the Class Action



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) because: (1) there are one hundred or more (named and unnamed) class members, (2) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (3) there is minimal diversity because Plaintiffs and Defendants are citizens of different States.

27. This Court may exercise personal jurisdiction over Defendants because Defendants do substantial business in this State and within this District, maintain their principal places of business in this District, receive substantial compensation and profits from the marketing, distribution, and sale of products in this District, and have engaged in the unlawful practices described in this Complaint within this District.

28. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, including Defendants' design, manufacture, marketing, and distribution of the defective Products from their principal places of business located in this District.

## COMMON FACTUAL ALLEGATIONS

### The Stanley Classic Products

29. Stanley Classic Products have long been a part of Stanley's legacy, including the thermoses that consumers use to transport hot and cold beverages and food like soup to work, while traveling, or just being out and about. As Stanley describes it:

> Generations of people have come to rely on their Stanley bottles, mugs, lunchboxes, cook sets, flasks, growlers, coolers, and more every single day, knowing that they'll keep their food and drink at temperature longer, all while standing up to life's wear and tear.[7]

30. At some point, Stanley modified the actual classic Stanley Products in a variety of ways, including utilization of a new handle assembly system with the Defect.[8] Notwithstanding, Stanley continues to represent the current Products are just as durable as the originals, representing

[7] https://www.stanley1913.com/blogs/my-stanley/old-stanley-vs-new-stanley-whats-really-changed-in-the-unbreakable-bottle (Last Accessed March 1, 2026).

[8] *Id.* ("What's changed over the years? The answer? Everything and nothing.") (Last Accessed March 1, 2026).



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

to consumers that: "The new bottles are part of a constant evolution, of never being satisfied.... The Stanley name is more than a single product or process, it's a promise to the people who have come to rely on us for years: we make bottles that last a lifetime."[9]

31. As part of its current product offerings, Stanley designs, manufactures, and distributes the Stanley Classic Products directly online at its own website, and across the country through various authorized online and brick-and-mortar retailers such as Amazon, Target, Dick's Sporting Goods, Walmart, REI, and Ace Hardware. The Products are marketed as premium, durable drinkware solutions designed for safe transport of hot and cold liquids.[10]

32. The Products feature an insulated vacuum bottle design with an integrated handle assembly that allows consumers to carry the filled bottles by the handle during transport. The handle assembly is a critical component of the Products, as it enables consumers to safely carry the Products when filled with hot beverages.

33. A Stanley Classic Product with the clip handle at issue is featured below[11]:




[9] *Id.*

[10] *See* https://www.stanley1913.com/ (Last Accessed February 25, 2026).

[11] https://www.stanley1913.com/products/classic-legendary-bottle-1-5-qt (Last Accessed February 25, 2026).



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

34. The Products come in various sizes (1–1.5 quarts) and colors, and retail for $36.00–$45.00 depending upon the size.

35. These sizes contain the clip handle, shown as follows[12]:




36. The Products are sold at a premium price point, reflecting Stanley's positioning of the Products as high-quality, durable thermos products suitable for everyday use and outdoor activities.

37. More specifically, Stanley details that the "collapsible handle is made for easy grab-and-go," and the Products are made for and as follows:



Details & Specifications

Campsite, job site or even in the RV—the iconic style and rugged durability of this vacuum insulated stainless steel bottle means it's made to go anywhere. The double-wall vacuum insulation keeps all your drinks at the ideal temperature and the twist-and-pour stopper allows for a smoother pour. The collapsible handle is made for easy grab-and-go and the insulated lid doubles as a cup for drinking.

Maximum of 20 units allowed per order. Feel free to combine colors!

- Classic Series
- Recycled 18/8 stainless steel, BPA-free
- Double-wall vacuum insulation
- Leakproof + packable
- Insulated lid doubles as cup
- Dishwasher safe

[13]

**Defendants' Marketing and Representations**

38. Defendants marketed, labeled, and represented the Products as merchantable and fit

[12] Taken from expert investigation of the Products.

[13] https://www.stanley1913.com/products/classic-legendary-bottle-1-5-qt (Last Accessed February 25, 2026).



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

for the ordinary purposes for which they were used and sold, and as safe and reliable for consumers to store and carry foods and beverages for consumption.

39. Defendants made express representations through their website, marketing materials, packaging, and advertising that the Products were: (a) durable and built to last;[14] (b) safe for carrying hot liquids;[15] (c) reliable for everyday use;[16] (d) constructed with high-quality materials made for "rugged durability";[17] (e) suitable for their intended purpose of beverage transport;[18] and (f) free from defects in materials and workmanship.[19]

40. Defendants represented that the Products, including the collapsible grab-and-go handle, were designed and manufactured for durability and reliable performance,[20] when in fact the system was defectively designed and manufactured with inadequate materials and design specifications.

41. Defendants' marketing materials and representations consistently portrayed the Products as premium, durable, safe, and reliable drinkware solutions without any disclosure of the handle assembly Defect or the safety risks associated with handle failure during normal use.[21]

42. Defendants provided express written warranties with the Products, warranting that the Products would be free from defects in materials and workmanship for Life. The express warranties represented that Defendants would repair or replace defective products or provide refunds for products that failed to conform to warranty specifications.

43. Defendants' warranty representations were made online, on packaging, and in

---

[14] https://www.stanley1913.com/pages/sustainability; https://www.stanley1913.com/pages/product-warranty; https://www.stanley1913.com/products/classic-legendary-bottle-1-5-qt (Last Accessed February 25, 2026).

[15] https://www.stanley1913.com/products/classic-legendary-bottle-1-5-qt (Last Accessed February 25, 2026).

[16] *Id.* (Last Accessed February 25, 2026).

[17] *Id.* (Last Accessed February 25, 2026).

[18] *Id.* (Last Accessed February 25, 2026).

[19] https://www.stanley1913.com/pages/product-warranty (Last Accessed February 25, 2026).

[20] https://www.stanley1913.com/products/classic-legendary-bottle-1-5-qt?variant=5397294 7403112 (Last Accessed March 1, 2026).

[21] *See* https://www.stanley1913.com (Last Accessed March 1, 2026).



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

warranty documentation provided with the Products.

44. However, as described more fully below, Defendants either deny warranty claims when consumers make them, or otherwise replace the Products with more defective Products, rendering the warranty claims process futile, and the Lifetime Warranty unconscionable and failing of its essential purpose.

**Intended Use and Consumer Expectations**

45. Consumers, including Plaintiff, purchase the Products for the purpose of safely transporting hot and cold beverages during daily activities, commuting, outdoor recreation, and other routine uses.

46. Consumers use the Products by filling them with hot liquids such as coffee, tea, or other heated beverages, securing the lid, and carrying the Products by the handle during transport. This is the ordinary, intended, and foreseeable use of the Products as marketed and sold by Defendants.

47. Consumers reasonably expect, based on Defendants' marketing and representations, that the Products will safely and reliably transport hot beverages without the handle detaching or failing during normal use. Consumers further expect that the Products will not pose safety risks or cause injury when used for their intended purpose.

48. The handle assembly is essential to the safe use of the Products, as consumers rely on the handle to carry the Products when filled with food and beverages, including hot liquids. A properly functioning handle assembly is critical to preventing spills and protecting consumers from burn injuries.



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

49. Stanley is aware of sturdier and more reliable handles, as it uses them in the larger Classic products[22] (shown below):




50. Had Defendants disclosed the true nature of the Defect and the associated safety risks, consumers would not have purchased the Products or would have paid substantially less for them.

**The Defect**

51. As described above, the Products are designed and manufactured with a handle assembly that utilizes handle clips to secure the carrying handle to the vacuum bottle canister. The handle assembly is intended to allow consumers to safely and easily carry the Products when filled with hot and cold food and beverages during normal transport and use.

52. Expert evaluation revealed that the Products' handle clips are constructed of 3mm wire with a 3.3mm gap at the top[23]:

---

[22] https://www.stanley1913.com/products/classic-legendary-bottle-2-5-qt (Last Accessed February 25, 2026).

[23] Taken from expert investigation of the Products.



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110




53. The handle clips are the critical component that secures the handle to the vacuum bottle canister and bears the weight of the filled Product during transport.

54. The Defect allows for the clip to continue widening and separating from the canister under reasonable and foreseeable pressure associated with transporting liquid in the thermos, eventually separating completely and breaking from the canister.

55. The thinness and material of the clip, coupled with the gap in the connection, creates an inherent structural weakness in the handle assembly that progressively deteriorates under ordinary use conditions.

56. Below is a photograph depicting eventual failure of the clip at the thermos canister[24]:



[24] *Id.*



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

57. Additional examples of separated clips are depicted below[25]:





58. The Defect causes the handle clips to be susceptible to progressive failure under ordinary use. As consumers use the Products for their intended purpose of transporting beverages, the clips progressively widen and weaken, eventually reaching a point where they can no longer support the weight of the filled Product.

59. The Defect is concealed beneath other metal components of the handle assembly, rendering it latent and unobservable to consumers during normal inspection at the time of purchase or during routine use. Consumers have no ability to detect the Defect through visual inspection or normal handling of the Products.

60. The progressive nature of the handle clip failure means that Products may initially appear to function properly and perform as expected but will eventually fail under normal use conditions as the clips continue to widen and weaken over time.

61. The Defect manifests in failure that can occur weeks, months, or even years after purchase, depending on the frequency of use and the conditions under which the Products are used. The variability in timing makes it impossible for consumers to predict or prevent failure through

[25] *Id.*



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

routine inspection or care.

**Safety Consequences and Irreparability**

62. When the handle clips fail, the handle detaches suddenly and without warning during normal use, causing the entire vacuum bottle and its contents to fall. Because consumers primarily use the Products to transport hot beverages such as coffee, tea, or other heated liquids, the sudden detachment causes scalding hot liquid to spill onto the user.

63. The safety consequences of the Defect are severe. Sudden handle detachment may cause spills that result in severe burns requiring emergency medical treatment, ambulance transport, specialized burn treatment, permanent scarring, emotional trauma, and significant disruption to daily life.

64. Once the handle assembly fails, it cannot be reasonably repaired. The progressive widening and material failure of the clips renders the handle assembly permanently compromised and unsafe for further use.

65. The Defect is not an isolated manufacturing anomaly but represents a systematic design and manufacturing flaw affecting the entire product line. The Defect manifests consistently across different units of the same Products with the clip handle assembly, indicating a fundamental flaw in the design specifications and manufacturing process.

66. The Defect renders the Products unfit for the ordinary purpose for which they are purchased and used, which is to safely transport hot and cold food and beverages.

67. As a result of the Defect, the Products pose an unreasonable risk of harm of sudden detachments with hot liquids in them and posing a risk of personal injury to Plaintiffs, Class Members, and consumers.

68. Stanley is aware of sturdier and more reliable handle designs, as it uses them in the larger Classic products (2.5 quart models). This demonstrates that alternative, safer handle assembly designs were available and feasible for implementation in the Products at issue, yet Defendants chose to design and manufacture the Products with the inadequate 3mm wire clips with 3.3mm gaps



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

that are susceptible to progressive failure.

**Defendants' Knowledge of the Defect**

69. Defendants knew or should have known when they sold the Products to the public that the Products suffered from the Defect, and that the Defect caused the Products to fail and posed a serious safety risk for consumers.

70. Based on Defendants' engineering and design knowledge, Defendants have known since the Products were created with 3mm wire handle clips featuring a 3.3mm gap at the top that those clips would be susceptible to progressive failure under ordinary use conditions. Defendants knew that the thinness and material of the clip, coupled with the gap in the connection, would allow the clip to continue widening and separating from the canister under reasonable and foreseeable pressure associated with transporting liquid in the thermos.

71. Defendants should have knowledge of these facts through testing for durability and failure modes in the design and manufacturing process. As a manufacturer of premium thermos products for over a century, Defendants possess extensive engineering expertise regarding the materials, design specifications, and performance requirements necessary to create safe and reliable handle assemblies for insulated drinkware products.

72. Despite this knowledge and expertise, Defendants designed and manufactured the Products with handle clips that were inadequate to safely support the weight of the filled Products during normal, foreseeable use. Defendants knew or should have known that the handle assembly would fail under ordinary use conditions yet continued to market and sell the Products without disclosing this material defect.

73. The Defect is concealed beneath other metal components of the handle assembly, rendering it latent and unobservable to consumers during normal inspection. Defendants designed the Products in a manner that actively concealed the Defect from consumers, making it impossible for consumers to discover the inadequate handle clips through reasonable inspection at the time of purchase or during routine use.



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

74. Defendants' knowledge of the Defect and its serious safety implications is further evidenced by the Collazo incident[26] and other incidents of handle failure resulting in severe burn injuries to consumers.

75. The Collazo incident exemplifies the severity of injuries that can result from the Defect.

76. In addition to the Collazo incident, Defendants have received notice of the Defect through consumer complaints, warranty claims, and online reviews reporting handle failures during normal use of the Products.

77. Defendants' knowledge of these facts is established through consumer complaints that the Products failed during normal use. Consumers have reported that the handle detached unexpectedly while carrying the Products filled with hot beverages, causing spills and resulting in burn injuries, property damage, and other harm.

78. The complaints demonstrate that Defendants have been aware of the dangerous and potentially harmful Defect but have not taken any steps to remedy the Defect or recall the Products. Despite knowledge of handle failures causing injuries, Defendants continued to manufacture, market, and sell the Products without disclosure of the Defect or adequate warnings.

79. Defendants knew or should have known that reasonable consumers would be unaware of the true defective nature of the Products, and that consumers reasonably expected that the Products they purchased would function properly and safely transport hot beverages without the handle detaching during normal use.

80. Defendants knew that the Defect posed serious safety risks to consumers, including the risk of burns from scalding hot liquids when the handle detaches unexpectedly.

81. Despite their knowledge of the Defect and the serious safety risks it posed, Defendants failed to disclose the Defect to consumers at or after the time of purchase. Defendants did not warn consumers that the handle assembly could fail during normal use or that the Products

[26] As detailed in the *Collazo* Complaint, and above.



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

posed an unreasonable risk of causing severe burn injuries.

82. Despite their knowledge of the Defect and resulting injuries, Defendants failed to recall the Products or remove them from the stream of commerce. Defendants continued to manufacture, distribute, market, and sell the defective Products to consumers throughout the United States without taking any corrective action.

83. Defendants failed to disclose the Defect in their marketing materials, product packaging, or at the point of sale. Defendants' marketing materials and website representations consistently portrayed the Products as premium, safe, and reliable drinkware solutions suitable for carrying hot liquids, without any disclosure of the handle attachment defect or associated safety risks.

84. Defendants failed to provide adequate warnings or instructions to prevent the harms associated with the Defect. Defendants did not warn consumers that the handle clips were susceptible to progressive failure, that the handle could detach suddenly during normal use, or that such detachment could result in severe burn injuries when the Products contained hot liquids.

85. Instead of disclosing the material safety defects, Defendants actively concealed the Defect from Plaintiffs and Class Members. Defendants concealed the Defect by failing to disclose it in marketing materials, product descriptions, packaging, and warranty documentation provided to consumers.

86. When consumers made warranty claims to Defendants regarding handle failures, Defendants actively concealed the systematic nature of the Defect by:

a. Denying that handle detachment constitutes a defect covered by warranty;

b. Attributing failures to consumer misuse rather than design and manufacturing defects; and

c. Failing to acknowledge the safety risks associated with handle failure.

87. Defendants improperly and unlawfully denied valid warranty claims related to handle attachment failures, despite the systematic nature of the Defect affecting the entire product



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

line. By denying warranty claims and attributing handle failures to consumer misuse, Defendants further concealed the existence and pervasiveness of the Defect from consumers.

88. Defendants provided inadequate remedies that did not address the underlying Defect. Rather than recalling the Products, disclosing the Defect, or providing replacement products with a safe handle assembly, Defendants continued to sell the defective Products while concealing the safety risks from consumers.

89. To the extent Defendants offered to replace defective Products under warranty, Defendants replaced the Products with other defective Products containing the same handle clip assembly defect. This practice further concealed the systematic nature of the Defect and deprived consumers of effective remedies.

90. Defendants had superior and exclusive knowledge of the Defect. As the designer and manufacturer of the Products, Defendants possessed detailed knowledge of the handle clip specifications, materials, testing results, and performance characteristics that consumers could not reasonably discover through inspection or normal use.

91. The Defect is not reasonably discoverable by consumers until failure occurs. The handle clips are concealed beneath other metal components, and the progressive nature of the failure means that the Products may appear to function properly until the clips have widened sufficiently to cause sudden detachment during use.

92. Defendants have actively concealed the existence and nature of the Defect from Plaintiffs and Class Members, despite knowledge of the existence and pervasiveness of the Defect. Defendants knew that disclosing the Defect would negatively impact sales of the Products and harm Defendants' reputation as a manufacturer of premium, safe, and reliable thermos products.

93. Defendants prioritized profits over consumer safety by continuing to manufacture, market, and sell the defective Products while concealing the serious safety risks from consumers. Defendants chose to neither remedy the Defect nor remove the Products from the stream of commerce, despite knowledge that the Defect could result in severe burn injuries requiring



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

emergency medical treatment and causing permanent scarring and disfigurement.

94. Defendants' concealment of the Defect and failure to warn consumers of the serious safety risks demonstrate willful and deliberate conduct aimed at protecting Defendants' profits and market position while exposing consumers to unreasonable risks of harm.

**Stanley Product Lifetime Warranty**

95. Stanley represents the Products are "free from defects in material and workmanship" for the lifetime of the product. More specifically, this Lifetime Warranty (the "Warranty") is as follows[27]:

> Our products are warranted to be free from defects in material and workmanship at the time of the initial purchase. This lifetime warranty covers degradation of thermal performance.
>
> This warranty applies only when our products are put to normal use and cared for according to the care and use instructions applicable to the products.
>
> This warranty applies only to products purchased from Stanley or an authorized seller.
>
> NOTE: We do not cover damage resulting from natural disasters or accidents, such as fires. This warranty does not apply to any non-stainless-steel part.

96. The Warranty additionally represents that, if the product is covered by the Warranty,[28]:

> [Stanley] will repair or replace your product, in our sole discretion, at our expense with a comparable product currently being manufactured by us. If there are no comparable products currently being manufactured, we will contact you to discuss options. Replacements do not guarantee color or finish.
>
> If you have a product with a custom design, we are not able to screen print or engrave the artwork on your replacement product.

96. The Warranty fails of its essential purpose for the following reasons:

a. The defective handle assembly cannot be "repaired once it failed;"

b. Stanley fails to disclose its knowledge of the Defect on its website, during

[27] https://www.stanley1913.com/pages/product-warranty (Last Accessed March 1, 2026).

[28] *Id.*



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

sales, in authorized retailer websites, in point-of-sales information in brick-and-mortar retailers;

c. Stanley fails to disclose its knowledge of the Defect when contacted by customers about the Product; and

d. Stanley consistently replaces the Products with more defective products.

97. As described herein, Stanley breached the Warranty when it shipped the Products (and at the point of sale to consumers) because the Products were defective when they came off the assembly line. The Defect causes the Products to fail prematurely and makes them unable to properly or safely use the Products. Thus, at the time the Products were shipped to or sold to consumers, Stanley was in violation of the express warranty.

98. Further, because Stanley does not have non-defective like-for-like Products available to replace the defective Products, it is unable to fulfill its warranty obligations at the point of purchase, or anytime thereafter, and the Warranty is breached immediately upon purchase.

99. Additionally, the Warranty is unconscionable as follows:

a. Any exclusion of design defects;

b. Its exclusion of non-stainless steel components;

c. Its other disclaimers of warranties; and

d. Its limitation of any remedies.

100. The Warranty is also unconscionable given Stanley's knowledge of the Defect, the existence of the Defect at the point of sale, Stanley's failure to disclose the Defect at the time of sale and during warranty communications, and the premature failure of the Products.

101. Any limitations on the Warranty, including exclusion of design defects if any, are procedurally unconscionable because of unequal bargaining power between Stanley and the Plaintiffs and Class Members.

102. Any limitations on the Warranty are substantively unconscionable because Stanley knew the Products were defective and would continue to fail prematurely without an adequate



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

replacement. The Products also pose a safety risk to consumers because the Defect can lead to failure while hot beverages are being transported or stored, like the events described in the *Collazo* complaint.

103. Stanley failed to disclose the Defect, or safety hazards associated therewith, to consumers during communications with consumers.

104. Stanley has actively concealed the existence and nature of the Defect from consumers despite its knowledge of the existence and pervasiveness of the Defect; and well before Plaintiffs and Class Members purchased the Products and during warranty communications.

105. Online complaints reveal that Stanley likewise delays or otherwise improperly handles warranty claims, demonstrating that the Warranty in practice also fails of its essential purpose and is unconscionable.

106. As a direct, proximate, and foreseeable result of the Defect, Plaintiffs and Class Members suffered damages, including but not limited to: (a) the difference in value of the Products as purchase and the Products received; (b) loss of use of the Products; (c) cost to replace the Products with a non-defective product; and (d) consequential damages.

107. Plaintiffs and Class Members were in privity with Stanley because Stanley makes direct representations to consumers, who are the ultimate purchasers, about the qualities and attributes of the Products including the aforementioned advertising by Stanley regarding durability and safety of the Product for transporting beverages and liquid foods.

108. Stanley, through its retailers, issued the warranties to Plaintiffs and Class Members as part of the sale of the Products.

**<u>PLAINTIFF HUGO HERNANDEZ'S FACTUAL ALLEGATIONS</u>**

109. In or about early 2022, Mr. Hernandez began shopping for a new, reliable thermos that would be long lasting, durable, and safe for carrying hot beverages. In anticipation of purchasing a new thermos, Mr. Hernandez performed research online, reviewed product descriptions and customer reviews, and reviewed representations made by Stanley regarding their vacuum bottles.



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

110. In selecting his thermos, Mr. Hernandez relied on Stanley's well-established reputation as a manufacturer of premium, durable, high-quality thermos products. He further relied on Stanley's representations in its marketing materials and product descriptions regarding the Products' quality, reliability, durability, and safety for carrying hot liquids. He expected that the handle assembly would function properly and safely for its intended purpose.

111. Mr. Hernandez purchased his 1.1 qt Stanley Heritage Classic Vacuum Bottle with Handle from Amazon on April 5, 2022. Mr. Hernandez purchased the Product because he believed it to be a high-quality, durable thermos from a trusted manufacturer compared to other brands and models available in the market.

112. Mr. Hernandez purchased his Product for normal, everyday household use to transport hot beverages, and it has in fact at all times only been used for normal, foreseeable purposes for which such products are intended.

113. Once Mr. Hernandez received the Product, he began to regularly use it for its intended purpose. From the time of purchase, Mr. Hernandez used the Product as intended by filling it with hot liquids such as coffee and tea, securing the lid, and carrying the Product by the handle during transport to work, outdoor activities, and other daily activities.

114. Mr. Hernandez maintained the Product in a reasonable manner and used it only for its ordinary, intended purpose of safely transporting hot beverages. He had no reason to believe that the Product contained any defect or posed any safety risk during normal use.

115. After a period of using the Product, Mr. Hernandez noticed that the clips affixed to his Classic Bottle had begun to stretch. He became concerned that the clips would further stretch and result in eventual breakage as he could feel the thermos sliding from side-to-side on the clip. With continued use, the clip progressively stretched to the point of losing its integrity and as a result, reached failure.

116. Because Stanley unlawfully concealed the Defect from Mr. Hernandez before his purchase, as well as after the Product was purchased and while he was using it, he did not suspect



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

(and had no reason to suspect) that there was anything wrong with the Product until the Defect manifested and caused his injuries.

117. The Defect was latent and concealed beneath other metal components of the handle assembly, rendering it unobservable to Mr. Hernandez during normal inspection or use. Mr. Hernandez had no ability to discover the Defect through reasonable inspection or ordinary use of the Product.

118. Mr. Hernandez's Product did not perform as expected or as represented by Stanley. Had he known of the Defect and the serious safety risks associated with the defective handle assembly, he would not have purchased the Product or would have paid substantially less than he did. Therefore, he did not receive the benefit of his bargain.

119. Mr. Hernandez purchased the Product in reliance on Stanley's representations regarding the quality, durability, and safety of the Product, and he suffered economic loss and physical injuries as a direct result of the Defect that Stanley knew of or should have known of, but failed to disclose to consumers.

## PLAINTIFF GINA DAVIS'S FACTUAL ALLEGATIONS

120. In 2024, Ms. Davis began shopping for a new, reliable thermos that would be long lasting, durable, and safe for carrying hot beverages. In selecting her thermos, Ms. Davis relied on Stanley's well-established reputation as a manufacturer of premium, durable, high-quality thermos products. She further relied on Stanley's representations in its marketing materials and product descriptions regarding the Products' quality, reliability, durability, and safety for carrying hot liquids. She expected that the handle assembly would function properly and safely for its intended purpose.

121. Ms. Davis purchased her Stanley Legendary Classic Bottle with Handle from Target. Ms. Davis purchased the Product because she believed it to be a high-quality, durable thermos from a trusted manufacturer compared to other brands and models available in the market.

122. Ms. Davis purchased her Product for normal, everyday household use to transport



BRYSON HARRIS SUCIU & DEMAY, PLLC
6212 Reitan Road NE
Bainbridge Island, WA 98110

hot beverages, and it has in fact at all times only been used for normal, foreseeable purposes for which such products are intended.

123. Once Ms. Davis received the Product, she began to regularly use it for its intended purpose. From the time of purchase, Ms. Davis used the Product as intended by filling it with hot liquids such as coffee and tea, securing the lid, and carrying the Product by the handle during transport to work, outdoor activities, and other daily activities.

124. Ms. Davis maintained the Product in a reasonable manner and used it only for its ordinary, intended purpose of safely transporting hot beverages. She had no reason to believe that the Product contained any defect or posed any safety risk during normal use.

125. Shortly after purchasing the Product, Ms. Davis noticed that the clips affixed to her Classic Bottle had begun to stretch and become detached from the body of the bottle. She would have to use pliers to bend the clips back into place, however the problem would return after a short period of use. She became concerned that the clips would further stretch and result in eventual breakage.

126. Because Stanley unlawfully concealed the Defect from Ms. Davis before her purchase, as well as after the Product was purchased and while she was using it, she did not suspect (and had no reason to suspect) that there was anything wrong with the Product until the Defect manifested and caused his injuries.

127. The Defect was latent and concealed beneath other metal components of the handle assembly, rendering it unobservable to Ms. Davis during normal inspection or use. Ms. Davis had no ability to discover the Defect through reasonable inspection or ordinary use of the Product.

128. Ms. Davis's Product did not perform as expected or as represented by Stanley. Had she known of the Defect and the serious safety risks associated with the defective handle assembly, she would not have purchased the Product or would have paid substantially less than she did. Therefore, she did not receive the benefit of her bargain.

129. Ms. Davis purchased the Product in reliance on Stanley's representations regarding


**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

the quality, durability, and safety of the Product, and she suffered economic loss and physical injuries as a direct result of the Defect that Stanley knew of or should have known of, but failed to disclose to consumers.

**PLAINTIFF WILLIAM WHITE'S FACTUAL ALLEGATIONS**

130. In 2023, Mr. White began shopping for a new, reliable thermos that would be long lasting, durable, and safe for carrying hot beverages. In selecting his thermos, Mr. White relied on Stanley's well-established reputation as a manufacturer of premium, durable, high-quality thermos products. He further relied on Stanley's representations in its marketing materials and product descriptions regarding the Products' quality, reliability, durability, and safety for carrying hot liquids. He expected that the handle assembly would function properly and safely for its intended purpose. Indeed, he had purchased a similar Stanley thermos before and was aware of Stanley's reputation for quality thermoses.

131. Mr. White purchased his Stanley Heritage Classic Vacuum Bottle with Handle from Walmart. Mr. White purchased the Product because he believed it to be a high-quality, durable thermos from a trusted manufacturer compared to other brands and models available in the market.

132. Mr. White purchased his Product for normal, everyday household use to transport hot beverages, and it has in fact at all times only been used for normal, foreseeable purposes for which such products are intended.

133. Once Mr. White received the Product, he began to regularly use it for its intended purpose. From the time of purchase, Mr. White used the Product as intended by filling it with hot liquids such as coffee and tea, securing the lid, and carrying the Product by the handle during transport to work, outdoor activities, and other daily activities.

134. Mr. White maintained the Product in a reasonable manner and used it only for its ordinary, intended purpose of safely transporting hot beverages. He had no reason to believe that the Product contained any defect or posed any safety risk during normal use.

135. Shortly after purchasing the Product, Mr. White noticed that the clips affixed to his



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

Classic Bottle had begun to stretch and become detached from the body of the bottle. He would have to bend the clips back into place; however, the problem would return after a short period of use. He became concerned that the clips would further stretch and result in eventual breakage.

136. Because Stanley unlawfully concealed the Defect from Mr. White before his purchase, as well as after the Product was purchased and while he was using it, he did not suspect (and had no reason to suspect) that there was anything wrong with the Product until the Defect manifested and caused his injuries.

137. The Defect was latent and concealed beneath other metal components of the handle assembly, rendering it unobservable to Mr. White during normal inspection or use. Mr. White had no ability to discover the Defect through reasonable inspection or ordinary use of the Product.

138. Mr. White's Product did not perform as expected or as represented by Stanley. Had he known of the Defect and the serious safety risks associated with the defective handle assembly, he would not have purchased the Product or would have paid substantially less than he did. Therefore, he did not receive the benefit of his bargain.

139. Mr. White purchased the Product in reliance on Stanley's representations regarding the quality, durability, and safety of the Product, and he suffered economic loss and physical injuries as a direct result of the Defect that Stanley knew of or should have known of, but failed to disclose to consumers.

## TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

### Discovery Rule Tolling

140. Plaintiffs and Class Members could not have discovered through the exercise of reasonable diligence that their Products were defective within the time-period of any applicable statutes of limitation.

141. The Defect is latent and concealed beneath other metal components of the handle assembly, rendering it unobservable to consumers during normal inspection at the time of purchase or during routine use. Neither Plaintiffs nor Class Members knew or could have known that the



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

Products contain the Defect, which causes the handle to detach unexpectedly during normal use, and may cause injuries.

142. The progressive nature of the handle clip failure means that the Products may initially appear to function properly and perform as expected, giving consumers no indication that any defect exists. The Defect only manifests when the clips have widened sufficiently to cause sudden detachment during use, which may occur weeks, months, or years after purchase depending on frequency of use and conditions.

143. Defendants actively concealed the Defect from consumers through their marketing materials, product packaging, and warranty communications, which consistently portrayed the Products as durable, safe, and reliable without any disclosure of the handle assembly defect or associated safety risks.

144. Plaintiffs and Class Members had no knowledge of the Defect and it occurred in a part of the Products that is not readily visible to consumers. Defendants attempted to conceal their knowledge of the Defect by denying warranty claims, attributing handle failures to consumer misuse, and providing inadequate remedies that did not address the underlying defect. Accordingly, any applicable statute of limitation is tolled.

**Fraudulent Concealment Tolling**

145. Throughout the time period relevant to this action, Defendants concealed from, misled, and failed to disclose to Plaintiffs and Class Members vital information about the Defect described herein.

146. Defendants kept Plaintiffs and Class Members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiffs nor Class Members could have discovered the Defect, even upon reasonable exercise of due diligence.

147. Defendants have been aware that the Products they designed, manufactured, and sold contained the Defect, resulting in sudden handle detachment during normal use and causing severe burn injuries to consumers.



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

148. Defendants knew or should have known based on their engineering and design knowledge that handle clips constructed of 3mm wire with a 3.3mm gap would be susceptible to progressive failure under ordinary use conditions. Despite this knowledge, Defendants failed to disclose and concealed, and continue to conceal, this critical information from Plaintiffs and Class Members, even though, at any point in time, they could have disclosed the Defect through a product recall, individual correspondence, media release, or by other means.

149. Defendants made affirmative misrepresentations to consumers during the sale of the Products, including that the Products were durable, safe for carrying hot liquids, reliable for everyday use, and free from defects in materials and workmanship.

150. Defendants made affirmative misrepresentations to Plaintiffs and consumers during warranty claims and other correspondence with consumers lodging complaints, including denying that handle detachment constitutes a defect, attributing failures to consumer misuse, and failing to acknowledge the safety risks associated with handle failure.

151. Plaintiffs and Class Members justifiably relied on Defendants to disclose the Defect in the Products that they purchased, because the Defect was hidden and not discoverable through reasonable efforts by Plaintiffs and Class Members.

152. Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiffs and Class Members have sustained as a result of the Defect, by virtue of the fraudulent concealment doctrine.

**Estoppel**

153. Defendants were under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of the defective Products.

154. Defendants knowingly concealed the true nature, quality, and character of the defective Products from consumers.

155. Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

156. Further, the causes of action alleged herein did not accrue until Plaintiffs and Class Members discovered or reasonably should have discovered that their Products had the Defect. Plaintiffs and Class Members had no realistic ability to discern that the Products were defective until they learned of the existence of the Defect through handle failure or other means. In either event, Plaintiffs and Class Members had no reason to discover their causes of action because of Defendants' active concealment of the true nature of the Defect.

## FED. R. CIV. P. 9(b) ALLEGATIONS

157. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Although Defendants are in the best position to know what content they placed on their website and in marketing materials during the relevant timeframe, to the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

158. **WHO**: Defendants made material misrepresentations and/or omissions of fact through their website representations, warranties, labeling and marketing materials, product packaging, retailer product listings (including Amazon product listings), retail displays, statements and representations made by customer service representatives receiving warranty claims, and through statements and representations made by authorized retailers of the Products, which include statements that the Products were not defective, were durable and built to last, were safe for carrying hot liquids, were reliable for everyday use, were constructed with high-quality materials, were suitable for their intended purpose of beverage transport, and were free from defects in materials and workmanship.

159. **WHAT**: Defendants' conduct here was, and continues to be, fraudulent because (a) they omitted and concealed that the Products are defective in that the handle clips are constructed of 3mm wire with a 3.3mm gap at the top and are susceptible to progressive failure under ordinary use, (b) that the defective condition is latent and concealed beneath other metal components, (c) that



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

the Defect can manifest in sudden handle detachment during normal and foreseeable use, (d) that this failure can result in injuries, and (e) that the Products are not fit for their ordinary purpose of safely transporting hot and cold beverages. Defendants' employees, customer service representatives, and authorized agents and representatives made affirmative misrepresentations to Plaintiffs and Class Members regarding the same qualities. Further, Defendants' conduct deceived Plaintiffs and Class Members into believing that the Products are not defective, are durable and built to last, are safe for carrying hot liquids, and will perform reliably for their intended purpose. When consumers made warranty claims regarding handle failures, Defendants made additional misrepresentations by denying that handle detachment constitutes a defect, attributing failures to consumer misuse rather than design and manufacturing defects, failing to acknowledge the safety risks associated with handle failure, and providing inadequate remedies that did not address the underlying Defect. Defendants knew or should have known this information is material to reasonable consumers, including Plaintiffs and Class Members in making their purchasing decisions, and would impact consumer choices regarding purchase decisions, yet they omit any warning that the Products suffer from the Defect.

160. **WHEN**: The material misrepresentations and/or omissions detailed herein were made prior to and available at the time Plaintiffs and Class Members performed research on the Products to gather information that would aid them in selecting the best thermos to purchase; prior to and at the time Plaintiffs and Class Members purchased the Products, including at the time of Plaintiffs' purchases; prior to and at the time Plaintiffs and Class Members made warranty claims about the Defect; in responding to consumer complaints and warranty claims; and continuously throughout the applicable Class periods.

161. **WHERE**: Defendants' material misrepresentations and/or omissions were made on their website, through marketing materials, in warranties and warranty documentation, on the labeling and packaging of the Products, on retail product listings (including Amazon product listings), through retail displays, as well as through statements made by authorized retailers



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

throughout the United States.

162. **HOW**: Defendants made misrepresentations and/or failed to disclose material facts regarding the true safety risks of normal use of the Products, the defective nature of the handle assembly, and the risk of severe burns and injuries in written form through marketing materials, packaging, warranties, and product descriptions; in electronic form through their website and online product listings; and through statements made by authorized retailers. Defendants also concealed the Defect through omission by failing to disclose the inadequate handle clip specifications (3mm wire with 3.3mm gap), the progressive failure of the clips under ordinary use, and the serious safety risks posed by sudden handle detachment when carrying hot liquids.

163. **WHY**: Defendants made the material misrepresentations and/or omissions detailed herein (including knowing and concealing knowledge of the Defect) for the express purpose of inducing Plaintiffs, Class Members, and all reasonable consumers to purchase and/or pay for the Products, to maintain their market reputation as a manufacturer of premium, durable, high-quality thermos products, to avoid the costs and reputational damage associated with a product recall or redesign, and to deter consumers from understanding that the handle assembly was defectively designed and posed serious safety risks, the effect of which was that Defendants profited by selling the Products to many thousands of consumers throughout the United States.

164. **INJURY**: Plaintiffs and Class Members purchased the Products when they would not have done so absent Defendants' misrepresentations and/or omissions, and, alternatively, paid more for the Products than they would have absent Defendants' misrepresentations and/or omissions. Further, as a result of Defendants' misrepresentations and omissions, Plaintiffs and Class Members suffered injuries and damages when the handles failed. The Products continue to pose unreasonable safety risks to consumers and a risk of premature failure.

## CLASS ACTION ALLEGATIONS

165. Plaintiffs bring this action individually and as a class action on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

166. Plaintiffs seek to represent the following Nationwide Class:

**All persons in the United States who purchased a Stanley Classic Product with clip handle assemblies, during the fullest period allowed by law until the date notice is disseminated.**

167. Plaintiff Hernandez seeks to represent the following California Subclass:

**All persons in California who purchased a Stanley Classic Product with clip handle assemblies during the fullest period allowed by law until the date notice is disseminated.**

168. Plaintiff Davis seeks to represent the following New Jersey Subclass:

**All persons in New Jersey who purchased a Stanley Classic Product with clip handle assemblies during the fullest period allowed by law until the date notice is disseminated.**

169. Plaintiff White seeks to represent the following North Carolina Subclass:

**All persons in North Carolina who purchased a Stanley Classic Product with clip handle assemblies during the fullest period allowed by law until the date notice is disseminated.**

170. Excluded from the Classes are: (1) Defendants, any entity in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns, and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

171. Plaintiffs reserve the right to modify or amend the class definitions after having had an opportunity to conduct discovery.



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

172. Numerosity: Fed. R. Civ. P. 23(a)(1). The members of the Classes are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, Plaintiffs are informed and believe that thousands of Stanley Products have been sold throughout the United States and California during the applicable Class periods. The number of Class Members can be determined through Defendants' sales information and other records in their possession. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic dispersion throughout the United States. The Classes are readily identifiable from information and records in the possession of Defendants and their third-party distributors and retailers.

173. Commonality: Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the Classes. These questions predominate over questions that may affect only individual Class Members because Defendants have acted on grounds generally applicable to the Classes. Such common legal or factual questions include, *inter alia*:

a. Whether the Products are defective;

b. Whether the Products are defectively designed and/or manufactured;

c. Whether Defendants knew or should have known about the Defect prior to distributing the Products to Plaintiffs and the members of the Classes;

d. Whether Defendants concealed from and/or failed to disclose to Plaintiffs and the members of the Classes the problems with the Products;

e. Whether Defendants knew or should have known about the Defect after distributing the Products to Plaintiffs and the members of the Classes;

f. Whether Defendants breached the implied warranty of merchantability;

g. Whether Defendants breached express warranties relating to the Products;

h. Whether Defendants' warranties are unconscionable;

i. Whether Defendants had a duty to disclose the defective nature of the



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

Products to Plaintiffs and Class Members;

j. Whether Defendants made misleading statements and omissions to consumers to gain additional profits and deter warranty or legal action;

k. Whether the fact that the Products suffer from the Defect would be considered material to a reasonable consumer;

l. Whether Defendants violated the California Consumers Legal Remedies Act;

m. Whether Defendants violated California's Unfair Competition Law;

n. Whether Defendants violated California's False Advertising Law;

o. Whether Defendants violated Washington's Consumer Protection Act;

p. Whether Defendants violated North Carolina's Unfair & Deceptive Trade Practices Act;

q. Whether Defendants violated New Jersey's Consumer Fraud Act;

r. Whether Defendants engaged in fraudulent concealment;

s. Whether Defendants were unjustly enriched;

t. Whether Plaintiffs and the members of the Classes are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

u. Whether Defendants should be enjoined from selling and marketing the defective Products; and

v. Whether Defendants engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing defective Products.

174. Typicality: Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of the claims of the members of the Classes as all members of the Classes are similarly affected by Defendants' wrongful conduct. Plaintiffs and all members of the Classes purchased Products with the Defect that causes the handle assembly to fail unexpectedly during normal use, posing serious safety risks and meaning that the Products cannot be used as intended. Plaintiffs and all members of the Classes



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

have been similarly affected by Defendants' refusal to disclose the Defect and by Defendants' uniform conduct in concealing the Defect. In addition, Defendants' conduct that gave rise to the claims of Plaintiffs and members of the Classes (i.e., designing, manufacturing, marketing, and selling defective Products, concealing the Defect, and breaching warranties with respect to the Products) is the same for all members of the Classes.

175. Adequacy of Representation: Fed. R. Civ. P. 23(a)(4). Plaintiffs will fairly and adequately protect the interests of the Classes because Plaintiffs have no interests antagonistic to, or in conflict with, the Classes that Plaintiffs seek to represent. Plaintiffs have retained attorneys experienced and competent in the prosecution of complex class action litigation, including consumer protection and product defect class actions. Plaintiffs intend to prosecute this action vigorously.

176. Predominance: Fed. R. Civ. P. 23(b)(3). The common questions of law and fact enumerated above predominate over the questions affecting only individual members of the Classes, and a class action is the superior method for the fair and efficient adjudication of this controversy. The defective nature of the Products is uniform across all units, Defendants' conduct in designing, manufacturing, marketing, and selling the Products was uniform, and Defendants' failure to disclose the Defect was uniform. Liability and breach issues are common to all Class Members. Any variation in individual Class Members' damages does not defeat predominance, as damages can be readily calculated on a class-wide basis through Defendants' sales records and other data.

177. Superiority: Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation, particularly in light of the relatively small size of individual Class Members' claims compared to the burden and expense of individual prosecution. Class treatment is efficient and will conserve the resources of the courts and the parties. Serial adjudication in numerous venues is not efficient, timely, or proper. Individual litigation would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which could establish incompatible



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

standards of conduct for Defendants. Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

178. Injunctive and Declaratory Relief: Fed. R. Civ. P. 23(b)(2). Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Classes as a whole. The Products continue to pose unreasonable safety risks to consumers, and Defendants continue to sell the defective Products without disclosure of the Defect or adequate warnings. Members of the Classes will remain at serious safety risk as a result of the Defect absent injunctive relief requiring Defendants to recall the Products, disclose the Defect, and/or provide adequate warnings and remedies.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
### UCC § 2-313
### (Plaintiff Hugo Hernandez Individually and on Behalf of the Nationwide Class)

179. Plaintiff Hernandez hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

180. In connection with its sale of the Products, Defendants expressly warranted that they were free from defects in materials and workmanship at the time of purchase, and suitable for safe transport of hot and cold beverages.

181. The defectively designed Products are subject to and otherwise covered by Defendants' Lifetime Warranty, which applies to each Product.

182. At all times referenced herein, Defendants were the “sellers” and “manufacturers” of the Products.

183. At all times referenced herein, the Products were “goods.”

184. Defendants’ representations in their Lifetime Warranty and regarding the durability, safety, and reliability of the Products, among other representations, each constitute an affirmation or promise made by the seller to the buyer which relates to the goods, and which becomes part of


BRYSON HARRIS SUCIU & DEMAY, PLLC
6212 Reitan Road NE
Bainbridge Island, WA 98110

the basis of the bargain and creates an express warranty that the goods shall conform to the affirmation or promise.

185. These descriptions and representations were made part of the basis of the bargain and created an express warranty that the goods shall conform to the description.

186. Each of the Products has a substantially identical Lifetime Warranty.

187. Defendants were obligated, under the terms of the express warranty, to adequately repair or replace the defective Products for, or otherwise reimburse the costs of the Products to, Plaintiff Hernandez and Class Members.

188. Privity is not required because Plaintiff Hernandez and each of the members of the Class are the intended beneficiaries of Defendants' warranties and the sale of the Products through retailers. The retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements provided by Defendants. Defendants' warranties were designed for and intended to benefit the consumer only, and Plaintiff Hernandez and Class Members were the intended beneficiaries of the Products.

189. More specifically, Defendants' manifest intent that their warranties apply to Plaintiff Hernandez and consumer Class Members as third-party beneficiaries is evident from the statements contained in their product literature, including their Lifetime Warranty, which specifically states the Products are to be used for normal use and provides for repair or replacement for the lifetime of the product. Likewise, it was reasonably foreseeable that Plaintiff Hernandez and consumer Class Members would be the intended beneficiaries of the products and warranties.

190. In their Lifetime Warranty, Defendants warrant that the Products would be free of defects in materials and workmanship for the lifetime of the Products.

191. Defendants also expressly warranted through their marketing materials, website, and product packaging that the Products were durable and built to last, safe for carrying hot liquids, reliable for everyday use, constructed with high-quality materials made for "rugged durability," suitable for their intended purpose of beverage transport, and free from defects in materials and



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

workmanship.

192. Defendants' warranty representations are made online, on their packaging, through their various manuals, and their Lifetime Warranty.

193. When Plaintiff Hernandez and Class Members make warranty claims to Defendants, Defendants mislead and deceive consumers by denying that the handle detachment constitutes a defect, attributing failures to consumer misuse rather than design and manufacturing defects, failing to acknowledge the safety risks associated with handle failure, and providing inadequate remedies that do not address the underlying Defect.

194. Defendants breached the warranty because they improperly and unlawfully deny valid warranty claims, and they have failed or refused to adequately repair or replace the Products with non-defective units. Plaintiff Hernandez and the Class Members have privity of contract with Defendants through their purchase of the Products, and through the express written and implied warranties that Defendants issued to their customers. Defendants' warranties accompanied the Products and were intended to benefit end-users of the Products.

195. To the extent Class Members purchased the Products from third-party retailers, privity is not required because the Class Members are intended third-party beneficiaries of the contracts between Defendants and third-party retailers and because the express warranty is intended to benefit purchasers or owners subsequent to the third-party retailer; in other words, the contracts are intended to benefit the ultimate consumer or user of the Products.

196. The express written warranties covering the Products were a material part of the bargain between Defendants and consumers. At the time Defendants made these express warranties, Defendants knew of the purpose for which the Products were to be used.

197. Defendants breached their express warranties by selling Products that were, in actuality, not free of defects in materials and workmanship, not durable or built to last, not safe for carrying hot liquids, would inevitably fail prematurely, were not made from merchantable materials and workmanship, and could not be used for the ordinary purpose of safely transporting hot and



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

cold beverages.

198. Defendants breached their express warranties by making material misrepresentations to consumers inquiring about the Defect and/or warranty during warranty calls and correspondence in an effort to avoid further warranty or litigation action, as well as to steer Plaintiff and Class Members to eventually purchase equally defective replacement Products.

199. Defendants breached their express written warranties to Plaintiff Hernandez and Class Members because the Products are defective at the time they leave the manufacturing plant, and on the first day of purchase, creating a serious safety risk to Plaintiff and Class Members.

200. The Products that Plaintiff Hernandez and Class Members purchased contained the Defect that causes the handle clips to progressively fail, the handles to detach unexpectedly during normal use, resulting in loss of the product, loss of the benefit of their bargain, and other personal injuries and property damage.

201. The limitations and the exclusions in Defendants' Lifetime Warranty are harsh, oppressive, one-sided, unconscionable and unenforceable, as described *supra*, particularly because Defendants knew that the Products suffered from the Defect described herein.

202. Any attempt by Defendants to limit or disclaim their express warranties in a manner that would exclude coverage of the Defect is unconscionable as a matter of law because the relevant purchase transactions were tainted by Defendants' concealment of material facts. Thus, any such effort to disclaim, or otherwise limit, their liability for the Defect is null and void.

203. Moreover, Defendants were put on constructive notice about their breach through their review of consumer complaints, including the Collazo incident and lawsuit filed on November 3, 2025, and other reports of handle failures resulting in severe burn injuries, and, upon information and belief, through product testing and engineering knowledge of the inadequate handle clip specifications.

204. Despite having notice and knowledge of the defective nature of the Products, Defendants failed to provide any relief to Class Members with Products beyond the limited warranty

period, failed to provide non-defective replacement Products to Plaintiff Hernandez and Class Members, and otherwise failed to offer any appropriate repair or compensation for the resulting damages.

205. Defendants breached their warranty to adequately repair or replace the Products despite their knowledge of the Defect, and/or despite their knowledge of alternative designs, materials, and/or options for manufacturing the Products with safe and reliable handle assemblies.

206. To the extent that Defendants offered to replace the defective Products, replacement as a remedy fails in its essential purpose given it is insufficient to make Plaintiff Hernandez and Class Members whole because the warranty covering the Products gives Defendants the option to repair or replace the Products with other defective Products, where neither is sufficient. The repair or replacement remedies fail of their essential purpose because Defendants cannot cure the design defect through repair or replacement with equally defective Products.

207. Many of the damages resulting from the defective Products cannot be resolved through the limited remedy of replacement, including severe burn injuries, permanent scarring, emotional trauma, and property damage caused by sudden handle detachment and hot liquid spills.

208. Accordingly, recovery by Plaintiff Hernandez and Class Members is not limited to the limited warranty of replacement, and they seek all remedies allowed by law.

209. Had Plaintiff Hernandez, Class Members, and the consuming public known that the Products were defective, posed an unreasonable risk of severe burn injuries and property damage, would cause such injuries and damage, or that Defendants would not properly honor their warranty, they would not have purchased the Products or would have paid substantially less for them.

210. To the extent any express warranties do not by their terms cover the Defect alleged in this Complaint, and to the extent the contractual remedy is in any other respect insufficient to make Plaintiff Hernandez and Class Members whole, the warranty fails of its essential purpose and, accordingly, recovery by Plaintiff Hernandez and Class Members is not restricted to the promises in any written warranties, and they seek all remedies that may be allowed by law.



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

211. Plaintiff Hernandez and Class Members have performed all duties required of them under the terms of the express warranties, except as may have been excused or prevented through the conduct of Defendants or by operation of law in light of Defendants' conduct described throughout this Complaint.

212. Plaintiff Hernandez provided Defendants notice of the breach on April 22, 2026, prior to the filing of this Complaint.

213. Defendants have received timely, direct, and constructive notice regarding the problems at issue in this litigation, including through the Collazo lawsuit filed on November 3, 2025, and notwithstanding, Defendants have failed and refused to offer an effective remedy.

214. As a direct and proximate result of Defendants' breach of their express written warranties, Plaintiff Hernandez and Class Members have suffered damages and did not receive the benefit of the bargain and are entitled to recover compensatory damages, including, but not limited to, the cost of the Products, diminution in value, loss of use. Plaintiff Hernandez and Class Members suffered damages at the point of sale stemming from their overpayment for the defective Products, in addition to loss of the Product and its intended benefits, and personal injuries and property damage resulting from handle failure.

## SECOND CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## UCC § 2-314
**(Plaintiffs Hernandez, Davis, and White Individually and on Behalf of the Nationwide Class)**

215. Plaintiffs hereby adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

216. Defendants are and were at all relevant times merchants with respect to the Products.

217. The Products are and were at all relevant times "goods."

218. Defendants were at all relevant times involved in the manufacturing, and are the distributors, warrantors, and/or sellers of the Products.

219. Defendants knew or had reason to know of the specific use for which the Products,



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

as goods, were purchased.

220. Defendants entered into agreements with retailers, suppliers, and/or contractors to sell the Products to be purchased by Plaintiffs and Class Members.

221. Defendants provided Plaintiffs and Class Members with implied warranties that the Products (a) would pass without objection in trade under contract description; (b) were merchantable and fit for the ordinary purposes for which they were used and sold and were not otherwise injurious to consumers and their property; and (c) conformed to Defendants' promises and affirmations of fact.

222. Although Plaintiffs and Class Members did not purchase the Products directly from Defendants in all instances, they had sufficiently direct dealings by basing their eventual purchases on Defendants' specifications, representations regarding the quality, durability, and safety of the Products, and Defendants' warranties directly benefiting Plaintiffs and Class Members.

223. Likewise, Defendants knew the identity, purpose, and requirements of the Products as vacuum bottles that would properly and safely transport hot and cold beverages such that they would not pose safety risks through handle detachment or otherwise fail prematurely.

224. Additionally, Plaintiffs and Class Members were obvious third-party beneficiaries by the language of the warranties and marketing materials, which were directed to end-user consumers who would use the Products for their intended purpose of safely transporting beverages.

225. However, the Products are not fit for their ordinary purpose of providing safe and reliable transport of hot and cold beverages because, *inter alia*, the Products contain the Defect preventing the Products from safely transporting beverages. The handle clips are susceptible to progressive failure under ordinary use, causing the handle to detach unexpectedly and possibly spilling hot contents onto users, resulting in injuries. Therefore, the Products are not fit for their particular purpose of safely and reliably transporting hot liquids.

226. The problems associated with the Defect are serious safety risks such that the Products do not provide safe and reliable thermos bottles, and therefore, there is a breach of the



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

implied warranty of merchantability.

227. Privity is not required because Plaintiffs and each of the members of the Class are the intended beneficiaries of Defendants' warranties and their sale through retailers. The retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements provided by Defendants. Defendants' warranties were designed for and intended to benefit the consumer only, and Plaintiffs and Class Members were the intended beneficiaries of the Products.

228. More specifically, Defendants' manifest intent that their warranties apply to Plaintiffs and consumer Class Members as third-party beneficiaries is evident from the statements contained in their product literature, including their Lifetime Warranty, which specifically states the Products are to be used for normal use. Likewise, it was reasonably foreseeable that Plaintiffs and consumer Class Members would be the intended beneficiaries of the products and warranties.

229. Defendants impliedly warranted that the Products were of merchantable quality and fit for such use. These implied warranties included, among other things: (i) a warranty that the Products manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for transporting hot and cold beverages; and (ii) a warranty that the Products would be fit for their intended use while the Products were being operated and carried by the handle.

230. Contrary to the applicable implied warranties, the Products, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with safe, reliable, and durable methods of transporting hot and cold beverages. Instead, the Products suffer from a defective design and/or manufacture, as alleged herein.

231. Defendants' failure to adequately repair or replace the defective Products has caused the warranty to fail of its essential purpose.

232. Defendants breached the implied warranties because the Products were sold with the Defect, which substantially reduced and/or prevented the Products from being used for safe transport of hot liquids and created unreasonable safety risks of severe burn injuries.



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

233. Moreover, Defendants were put on constructive notice about their breach through their review of consumer complaints described herein, including the Collazo incident and lawsuit filed on November 3, 2025, and other reports of handle failures causing burn injuries, and, upon information and belief, through product testing and engineering knowledge regarding the inadequate handle clip design specifications.

234. Any efforts to limit the implied warranties in a manner that would exclude coverage of the Products is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Products is null and void. The warranty limitations are unconscionable because Defendants knew of the Defect at the time of sale, and because the repair or replacement remedies fail their essential purpose since Defendants cannot cure the design defect.

235. Had Plaintiffs, Class Members, and the consuming public known that the Products were defective, posed an unreasonable risk of severe burns and other injuries, or would cause such damage, they would not have purchased the Products or would have paid substantially less for them.

236. As a direct and proximate result of the foregoing, Plaintiffs and the Class Members suffered, and continue to suffer, financial damage and injury, including loss of the benefit of the bargain, diminution in value, replacement costs, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**<u>THIRD CAUSE OF ACTION</u>**
**BREACH OF EXPRESS WARRANTY UNDER THE SONG-BEVERLY CONSUMER WARRANTY ACT**
**CAL. CIV. CODE §§ 1790, ET SEQ.**
**(Plaintiff Hernandez Individually and on Behalf of the California Subclass)**

237. Plaintiff Hernandez hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

238. Defendants are and were at all relevant times "manufacturers" within the meaning of Cal. Civ. Code § 1791.

239. The Products are and were at all relevant times "consumer goods" and Plaintiff Hernandez and putative California Subclass Members are "buyers" within the meaning of Cal. Civ.


**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

Code § 1791.

240. The Products were purchased by Plaintiff Hernandez and California Subclass Members in California for personal, family, or household purposes.

241. In connection with the sale of the Products, Defendants expressly warranted that they were free from defects in materials and workmanship, and suitable for safe transport of hot and cold beverages, within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2.

242. The defectively designed Products are subject to and otherwise covered by Defendants' Lifetime Warranty, which applies to each Product sold in California.

243. At all times referenced herein, Defendants were the "manufacturers" and "sellers" of the Products within the meaning of the Song-Beverly Consumer Warranty Act.

244. At all times referenced herein, the Products were "consumer goods" within the meaning of Cal. Civ. Code § 1791.

245. Defendants' representations in their Lifetime Warranty and regarding the durability, safety, and reliability of the Products, among other representations, constitute express warranties under the Song-Beverly Consumer Warranty Act that the Products would be free from defects and suitable for their intended purpose.

246. Defendants were obligated under Cal. Civ. Code § 1793.2 to adequately repair or replace the defective Products, or to reimburse Plaintiff Hernandez and California Subclass Members for the purchase price, when the Products failed to conform to the express warranties.

247. Privity is not required because Plaintiff Hernandez and each of the California Subclass Members are the intended beneficiaries of Defendants' warranties and the sale of the Products through retailers. The retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements provided by Defendants. Defendants' warranties were designed for and intended to benefit California consumers only, and Plaintiff Hernandez and California Subclass Members were the intended beneficiaries of the Products.

248. More specifically, Defendants' manifest intent that their warranties apply to Plaintiff



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

Hernandez and California Subclass Members as third-party beneficiaries is evident from the statements contained in their product literature, including their Lifetime Warranty, which specifically states the Products are to be used for normal household use. Likewise, it was reasonably foreseeable that Plaintiff Hernandez and California Subclass Members would be the intended beneficiaries of the products and warranties.

249. Defendants expressly warranted that the Products were free from defects in materials and workmanship, were durable and built to last, were safe for carrying hot liquids, were reliable for everyday use, were constructed with high-quality materials, were suitable for their intended purpose of beverage transport, and would perform as represented in Defendants' marketing materials and product packaging.

250. Defendants' warranty representations were made online, on packaging, through various manuals, and in their Lifetime Warranty, all of which constitute express warranties under Cal. Civ. Code §§ 1791.2 and 1793.2.

251. When Plaintiff Hernandez and California Subclass Members make warranty claims to Defendants regarding handle failures, Defendants mislead and deceive consumers by denying that handle detachment constitutes a defect covered by the warranty, attributing failures to consumer misuse rather than design and manufacturing defects, failing to acknowledge the safety risks associated with handle failure, and providing inadequate remedies that do not address the underlying Defect.

252. Defendants breached their express warranties under the Song-Beverly Consumer Warranty Act by selling Products that were, in actuality, not free of defects in materials and workmanship, not durable or built to last, not safe for carrying hot liquids, would inevitably fail prematurely, and could not be used for the ordinary purpose of safely transporting hot beverages.

253. Defendants breached their express warranties to Plaintiff Hernandez and California Subclass Members because the Products are defective at the time they leave the manufacturing plant, and on the first day of purchase, creating a serious safety risk to consumers.



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

254. The Products that Plaintiff Hernandez and California Subclass Members purchased contained the Defect that causes the handle clips to progressively fail, the handles to detach unexpectedly during normal use, and result in loss of the product, loss of the benefit of their bargain, and other damages.

255. The limitations and the exclusions in Defendants' Lifetime Warranty are harsh, oppressive, one-sided, unconscionable and unenforceable, particularly because Defendants knew that the Products suffered from the Defect described herein at the time of sale.

256. The Lifetime Warranty is unconscionable within the meaning of Cal. Civ. Code § 1790.3 because Defendants knew of the Defect at the time of sale, and because Defendants designed the Products in a manner that actively concealed the Defect from consumers while Defendants possessed superior knowledge that the handle assembly would fail under normal use and pose serious safety risks of severe burn injuries.

257. Any attempt by Defendants to limit or disclaim their express warranties in a manner that would exclude coverage of the Defect is unconscionable under Cal. Civ. Code § 1790.3 because the relevant purchase transactions were tainted by Defendants' concealment of material facts regarding the safety risks posed by the defective handle assembly.

258. Moreover, Defendants were put on constructive notice about their breach through their review of consumer complaints, including the Collazo incident and lawsuit filed on November 3, 2025, and other reports of handle failures resulting in severe burn injuries to California residents and residents of other states, and, upon information and belief, through product testing and engineering knowledge of the inadequate handle clip specifications.

259. Despite having notice and knowledge of the defective nature of the Products, Defendants failed to provide any relief to California Subclass Members, failed to provide non-defective replacement Products to Plaintiff Hernandez and California Subclass Members, and otherwise failed to offer any appropriate repair or compensation for the resulting damages as required under Cal. Civ. Code § 1793.2.



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

260. Defendants breached their warranty obligations under Cal. Civ. Code § 1793.2 by failing to adequately repair or replace the Products despite their knowledge of the Defect, and/or despite their knowledge of alternative designs, materials, and/or options for manufacturing the Products with safe and reliable handle assemblies.

261. To the extent that Defendants offered to replace the defective Products, replacement as a remedy fails in its essential purpose under Cal. Civ. Code § 1793.2(d) given it is insufficient to make Plaintiff Hernandez and California Subclass Members whole because the warranty covering the Products gives Defendants the option to repair or replace the Products with other defective Products, where neither is sufficient. The repair or replacement remedies fail of their essential purpose because Defendants cannot cure the design defect through repair or replacement with equally defective Products containing the same handle assembly defect.

262. Many of the damages resulting from the defective Products cannot be resolved through the limited remedy of repair or replacement under Cal. Civ. Code § 1793.2.

263. Accordingly, recovery by Plaintiff Hernandez and California Subclass Members is not limited to the remedies specified in Cal. Civ. Code § 1793.2, and they seek all remedies allowed by law, including reimbursement of the purchase price and consequential damages under Cal. Civ. Code § 1794.

264. Had Plaintiff Hernandez, California Subclass Members, and the consuming public known that the Products were defective, posed an unreasonable risk of severe burn injuries and property damage, would cause such injuries and damage, or that Defendants would not properly honor their warranty obligations under the Song-Beverly Consumer Warranty Act, they would not have purchased the Products or would have paid substantially less for them.

265. Plaintiff Hernandez and California Subclass Members have performed all duties required of them under the terms of the express warranties and the Song-Beverly Consumer Warranty Act, except as may have been excused or prevented through the conduct of Defendants or by operation of law in light of Defendants' conduct described throughout this Complaint.



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

266. Plaintiff Hernandez provided Defendants notice of the breach on April 22, 2026, prior to the filing of this Complaint, as required by Cal. Civ. Code § 1793.2.

267. Defendants have received timely, direct, and constructive notice regarding the problems at issue in this litigation, including through the Collazo lawsuit filed on November 3, 2025, and notwithstanding, Defendants have failed and refused to offer an effective remedy in violation of Cal. Civ. Code § 1793.2.

268. As a direct and proximate result of Defendants' breach of their express warranties under the Song-Beverly Consumer Warranty Act, Plaintiff Hernandez and California Subclass Members have suffered damages and did not receive the benefit of the bargain and are entitled to recover damages under Cal. Civ. Code § 1794, including, but not limited to, reimbursement of the purchase price, diminution in value, consequential damages, and civil penalties. Pursuant to Cal. Civ. Code § 1794(c), Plaintiff Hernandez and California Subclass Members are also entitled to recover their reasonable attorneys' fees and costs incurred in this action.

**<u>FOURTH CAUSE OF ACTION</u>**
**BREACH OF IMPLIED WARRANTY UNDER THE SONG-BEVERLY CONSUMER WARRANTY ACT**
**CAL. CIV. CODE §§ 1790, ET SEQ.**
**(Plaintiff Hernandez Individually and on Behalf of the California Subclass)**

269. Plaintiff Hernandez hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

270. Defendants are and were at all relevant times "manufacturers" within the meaning of Cal. Civ. Code § 1791.

271. The Products are and were at all relevant times "consumer goods" and Plaintiff Hernandez and putative California Subclass Members are "buyers" within the meaning of Cal. Civ. Code § 1791.

272. The Products were purchased by Plaintiff Hernandez and California Subclass Members in California for personal, family, or household purposes.

273. Every sale of consumer goods that are sold at retail in California is accompanied by


**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

a manufacturer's and retailer's implied warranty that the goods are merchantable within the meaning of Cal. Civ. Code §§ 1791.1 and 1792.

274. Defendants were at all relevant times involved in the manufacturing, and are the distributors, warrantors, and/or sellers of the Products sold in California.

275. Defendants knew or had reason to know of the specific use for which the Products, as consumer goods, were purchased by California consumers.

276. Defendants entered into agreements with retailers, suppliers, and/or contractors to sell the Products for purchase by California consumers.

277. Defendants provided Plaintiff Hernandez and California Subclass Members with implied warranties under Cal. Civ. Code §§ 1791.1 and 1792 that the Products (a) would pass without objection in trade under contract description; (b) were merchantable and fit for the ordinary purposes for which they were used and sold and were not otherwise injurious to consumers and their property; and (c) conformed to Defendants' promises and affirmations of fact.

278. Although Plaintiff Hernandez and California Subclass Members did not purchase the Products directly from Defendants in all instances, they had sufficiently direct dealings by basing their eventual purchases on Defendants' specifications, representations regarding the quality, durability, and safety of the Products, and Defendants' warranties directly benefiting Plaintiff Hernandez and California Subclass Members.

279. Likewise, Defendants knew the identity, purpose, and requirements of the Products as vacuum bottles that would properly and safely transport hot and cold beverages such that they would not pose safety risks through handle detachment or otherwise fail prematurely.

280. Additionally, Plaintiff Hernandez and California Subclass Members were obvious third-party beneficiaries by the language of the warranties and marketing materials, which were directed to California end-user consumers who would use the Products for their intended purpose of safely transporting beverages.

281. Privity is not required because Plaintiff Hernandez and each of the California



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

Subclass Members are uniformly contemplated as the intended beneficiaries of Defendants' warranties and the sale of the Products through retailers. The retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranties provided by Defendants. Defendants' warranties were designed for and intended to benefit California consumers only, and Plaintiff Hernandez and California Subclass Members were the intended beneficiaries of the Products.

282. More specifically, Defendants' manifest intent that their warranties apply to Plaintiff Hernandez and California Subclass Members as third-party beneficiaries is evident from the statements contained in their product literature, including their Lifetime Warranty, which specifically states the Products are to be used for normal household use. Likewise, it was reasonably foreseeable that Plaintiff Hernandez and California Subclass Members would be the intended beneficiaries of the products and warranties.

283. Defendants impliedly warranted under Cal. Civ. Code §§ 1791.1 and 1792 that the Products were of merchantable quality and fit for such use. These implied warranties included, among other things: (i) a warranty that the Products manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for transporting hot and cold beverages; and (ii) a warranty that the Products would be fit for their intended use while the Products were being operated and carried by the handle.

284. However, the Products are not fit for their ordinary purpose of providing safe and reliable transport of hot and cold beverages because, *inter alia*, the Products contain the Defect preventing the Products from safely transporting beverages. The handle clips are susceptible to progressive failure under ordinary use, causing the handle to detach unexpectedly, pose a safety risk if the Products contain hot liquids, and result in the Products failing in their entirety. Therefore, the Products are not fit for their particular purpose of safely and reliably transporting hot liquids, in violation of the implied warranty of merchantability under Cal. Civ. Code §§ 1791.1 and 1792.

285. Contrary to the applicable implied warranties under Cal. Civ. Code §§ 1791.1 and



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

1792, the Products, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff Hernandez and California Subclass Members with safe, reliable, and durable methods of transporting hot and cold beverages. Instead, the Products suffer from a defective design and/or manufacture, as alleged herein.

286. Defendants' failure to adequately repair or replace the defective Products has caused the implied warranty to fail of its essential purpose under Cal. Civ. Code § 1793.2(d).

287. Defendants breached the implied warranties under Cal. Civ. Code §§ 1791.1 and 1792 because the Products were sold with the Defect, which substantially reduced and/or prevented the Products from being used for safe transport of hot liquids and created unreasonable safety risks of severe burn injuries.

288. The warranty limitations are unconscionable within the meaning of Cal. Civ. Code § 1790.3 because Defendants knew of the Defect at the time of sale. The repair or replacement remedies fail of their essential purpose under Cal. Civ. Code § 1793.2(d) because Defendants cannot cure the design defect through repair or replacement with equally defective Products.

289. Any efforts to limit the implied warranties in a manner that would exclude coverage of the Products is unconscionable under Cal. Civ. Code § 1790.3, and any such effort to disclaim, or otherwise limit, liability for the Products is null and void.

290. Plaintiff Hernandez provided Defendants notice of the breach on April 22, 2026, prior to the filing of this Complaint.

291. Moreover, Defendants were put on constructive notice about their breach through their review of consumer complaints, including the Collazo incident and lawsuit filed on November 3, 2025, and other reports of handle failures causing burn injuries to California residents and residents of other states, and, upon information and belief, through product testing and engineering knowledge regarding the inadequate handle clip design specifications.

292. Had Plaintiff Hernandez, California Subclass Members, and the consuming public known that the Products were defective, posed an unreasonable risk of injuries, or would cause such



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

damage, they would not have purchased the Products or would have paid substantially less for them.

293. As a direct and proximate result of the foregoing, Plaintiff Hernandez and the California Subclass Members suffered, and continue to suffer, financial damage and injury, including loss of the benefit of the bargain, diminution in value, and replacement costs. Plaintiff Hernandez and California Subclass Members are entitled to all damages under Cal. Civ. Code § 1794, in addition to costs, interest and fees, including reasonable attorneys' fees pursuant to Cal. Civ. Code § 1794(c), as allowed by law.

## FIFTH CAUSE OF ACTION
## VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT ("WCPA") RCW 19.86.010, ET SEQ.
**(Plaintiffs Hernandez, Davis, and White Individually and on Behalf of the Nationwide Class or, in the Alternative, the California, New Jersey, and North Carolina Subclasses)**

294. Plaintiffs hereby adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

295. Defendants' conduct falls within the meaning of this statute because they engaged in unfair and deceptive acts or practices by selling the Stanley Classic Products with knowledge of the Defect.

296. The conduct described herein occurred in the course of trade or commerce. RCW 19.86.20.

297. More specifically, Defendants misrepresented, *inter alia*, that the Products were "durable and built to last," "safe for carrying hot liquids," "reliable for everyday use," "constructed with high-quality materials," "suitable for their intended purpose of beverage transport," and "free from defects in materials and workmanship."

298. Defendants further represented that the handle assembly was designed for durability and reliable performance, when in fact the handle clips are constructed of 3mm wire with a 3.3mm gap at the top and are susceptible to progressive failure under ordinary use.

299. Defendants omitted and concealed that the Products were defective, were not safe for carrying hot liquids, would pose serious safety risks to Plaintiffs and Class Members, were not


**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

of high-quality, could only be replaced with more defective Products, and have the propensity to fail suddenly and without warning, causing an unreasonable risk of injury when handles detach while transporting hot beverages.

300. Defendants omitted and concealed that the Defect is latent and concealed beneath other metal components, rendering it unobservable to consumers during normal inspection, and that the thinness and material of the clip coupled with the gap in the connection allows the clip to continue widening and separating from the canister under reasonable and foreseeable pressure associated with transporting liquid in the thermos.

301. Defendants' employees and representatives made affirmative misrepresentations to Plaintiffs and Class Members at the time of purchase, when consumers contacted Defendants to make warranty claims, and in responding to consumer complaints.

302. When consumers make warranty claims to Defendants regarding handle failures, Defendants conceal from consumers the fact that the handle detachment constitutes a defect, attributing failures to consumer misuse rather than design and manufacturing defects, failing to acknowledge the safety risks associated with handle failure, and providing inadequate remedies that do not address the underlying Defect.

303. Defendants are aware and cognizant that their representations that the Products work properly and are safe for carrying hot liquids are false and misleading and concealing the true condition of the Products.

304. Had Plaintiffs and putative Class Members known of the concealed Defect, they would not have paid—or would have paid substantially less—for the Products at issue.

305. As a result of Defendants' unlawful conduct, Plaintiff and putative Class Members were injured and suffered damages. Plaintiffs and putative Class Members are entitled to recover actual, punitive, and statutory damages, as appropriate, injunctive relief and other equitable relief, including restitution and disgorgement, as determined by the Court, pursuant to the WCPA.

306. Defendants' above-described conduct affects the public interest because it was part



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

of Defendants' above-described course of conduct, which affected and which injured or had the capacity to injure Plaintiffs, putative Class Members, and the public writ large, including consumers in the state of Washington. Additionally, Defendants designed, manufactured, marketed, and sold the Products at issue in the State of Washington. RCW 19.86.093.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT ("CLRA")**
**CAL. CIV. CODE §§ 1750, ET SEQ.**
**(Plaintiff Hernandez Individually and on Behalf of the California Subclass)**

**307.** Plaintiff Hernandez hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

308. Defendants' conduct falls within the meaning of this statute because it caused transactions resulting in the sale of goods to consumers—namely, the sale of defective Stanley Classic Products with clip handle assemblies. The Products are considered goods within the meaning of the statute under Cal. Civ. Code § 1761(a). Defendants constitute "persons" within the meaning of Cal. Civ. Code § 1761(c).

309. Plaintiff Hernandez and California Subclass Members are consumers pursuant to Cal. Civ. Code § 1761(d).

310. Defendants violated the CLRA by way of the following provisions:

a. "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." Cal. Civ. Code § 1770(a)(5);
b. "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Cal. Civ. Code § 1770(a)(7);
c. "Advertising goods or services with intent not to sell them as advertised." Cal. Civ. Code § 1770(a)(9);



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

d. "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." Cal. Civ. Code § 1770(a)(14); and

e. "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Cal. Civ. Code § 1770(a)(16).

311. Defendants engaged in unfair or deceptive acts or practices in violation of Cal. Civ. Code § 1770(a)(5), (a)(7), (a)(9), (a)(14), and (a)(16) when they manufactured, supplied, distributed, and/or sold Products which were advertised and/or warranted as safe, durable, reliable, and suitable for carrying hot liquids but otherwise concealed a known Defect.

312. More specifically, Defendants misrepresented, *inter alia*, that the Products were "durable and built to last," "safe for carrying hot liquids," "reliable for everyday use," "constructed with high-quality materials," "suitable for their intended purpose of beverage transport," and "free from defects in materials and workmanship."

313. Defendants further represented that the handle assembly was designed for durability and reliable performance, when in fact the handle clips are constructed of 3mm wire with a 3.3mm gap at the top and are susceptible to progressive failure under ordinary use.

314. Defendants omitted and concealed that the Products were defective, were not safe for carrying hot liquids, would pose serious safety risks to Plaintiff Hernandez and California Subclass Members, were not of high-quality, could only be replaced with more defective Products, and have the propensity to fail suddenly and without warning, causing injuries when handles detach while transporting hot beverages.

315. Defendants omitted and concealed that the Defect is latent and concealed beneath other metal components, rendering it unobservable to consumers during normal inspection, and that the thinness and material of the clip coupled with the gap in the connection allows the clip to continue widening and separating from the canister under reasonable and foreseeable pressure associated with transporting liquid in the thermos.



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

316. Defendants' employees and representatives made affirmative misrepresentations to Plaintiff Hernandez and California Subclass Members at the time of purchase, when consumers contacted Defendants to make warranty claims, and in responding to consumer complaints.

317. When consumers make warranty claims to Defendants regarding handle failures, Defendants mislead and deceive consumers by denying that handle detachment constitutes a defect, attributing failures to consumer misuse rather than design and manufacturing defects, failing to acknowledge the safety risks associated with handle failure, and providing inadequate remedies that do not address the underlying Defect.

318. Defendants are aware and cognizant that their representations that the Products work properly and are safe for carrying hot liquids are false and misleading.

319. Had Plaintiff Hernandez and the California Subclass known of the Defect, they would not have paid—or would have paid substantially less—for the Products at issue.

320. As a result of Defendants' unlawful conduct, Plaintiff Hernandez and California Subclass Members were injured and suffered damages. Plaintiff Hernandez and California Subclass Members are entitled to recover actual, punitive, and statutory damages, as appropriate, injunctive relief and other equitable relief, including restitution and disgorgement, as determined by the Court, pursuant to the CLRA.

321. Plaintiff Hernandez provided written notice to Defendants of their violations of the CLRA on April 22, 2026, at least thirty (30) days prior to the filing of this Complaint, pursuant to Cal. Civ. Code § 1782(a). The notice demanded that Defendants correct, repair, replace, or otherwise rectify the goods alleged to be in violation of Cal. Civ. Code § 1770.

322. Defendants have failed and refused to adequately respond to the notice or to remedy their violations of the CLRA. Defendants have failed to correct, repair, replace, or otherwise rectify the defective Products as required by Cal. Civ. Code § 1782(a).

323. Pursuant to Cal. Civ. Code § 1782(d), because Defendants failed to respond to Plaintiff's notice within thirty (30) days, Plaintiff Hernandez and California Subclass Members are



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

entitled to seek all remedies available under the CLRA, including damages, injunctive relief, and reasonable attorneys' fees and costs pursuant to Cal. Civ. Code § 1780(e).

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**
**CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.**
**(Plaintiff Hernandez Individually and on Behalf of the California Subclass)**

324. Plaintiff Hernandez hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

325. Defendants violated the UCL, pursuant to Cal. Bus. & Prof. Code § 17200, by engaging in "unfair competition" which is defined as "any unlawful, unfair, or fraudulent business practices [including] unfair, deceptive, untrue or misleading advertising."

326. Defendants' actions, as alleged herein, constitute fraudulent, unfair, and unlawful business practices committed in violation of the UCL because they violated the CLRA, breached express and implied warranties, and engaged in fraudulent concealment, as described above.

327. All of the conduct and representations alleged herein occurred in the course of Defendants' business and were part of a pattern or generalized course of illegal conduct.

**Unlawful Prong**

328. Defendants' conduct was unlawful because it violated the CLRA, as described above, and violated California warranty laws, including the breach of express and implied warranties under the California Commercial Code and the Song-Beverly Consumer Warranty Act.

329. Defendants' conduct was unlawful because they violated California law by manufacturing, distributing, marketing, and selling defective Products with knowledge of the Defect while concealing the serious safety risks from consumers.

**Fraudulent Prong**

330. Defendants' conduct was fraudulent because Defendants failed to disclose the Defect associated with the Products. Specifically, Defendants concealed that the Products were defective, were not safe for carrying hot liquids, would pose serious safety risks to consumers, were not durable or built to last, could only be replaced with more defective Products, would fail suddenly


BRYSON HARRIS SUCIU & DEMAY, PLLC
6212 Reitan Road NE
Bainbridge Island, WA 98110

and without warning during normal use, and had the propensity to cause injuries when handles detach while transporting hot beverages.

331. Defendants' conduct was fraudulent because they made affirmative misrepresentations in their marketing materials, website, product packaging, and advertising that the Products were durable and built to last, safe for carrying hot liquids, reliable for everyday use, constructed with high-quality materials, suitable for their intended purpose of beverage transport, and free from defects in materials and workmanship.

332. Defendants' conduct was fraudulent because they concealed that the handle clips are constructed of 3mm wire with a 3.3mm gap at the top and are susceptible to progressive failure under ordinary use, that the Defect is latent and concealed beneath other metal components, and that the thinness and material of the clip coupled with the gap in the connection allows the clip to continue widening and separating from the canister under reasonable and foreseeable pressure.

333. Defendants' representations and omissions were likely to deceive reasonable consumers, including Plaintiff Hernandez and California Subclass Members, who had no reason to know that the Products contained the Defect or posed serious safety risks.

334. Defendants knew or should have known that their representations were false and misleading and that they were omitting information that is material to reasonable consumers, including Plaintiff Hernandez and California Subclass Members, and impacts consumer choices regarding purchase decisions.

**Unfair Prong**

335. Defendants' conduct was unfair because it was specifically designed to and did induce Plaintiff Hernandez and California Subclass Members to purchase the Products at issue. Defendants knew or should have known they were omitting information that is material to reasonable consumers, including Plaintiff Hernandez and California Subclass Members, and impacts consumer choices regarding purchase decisions, yet they omitted necessary warnings that the Products have the propensity to fail suddenly, cause severe burns, and pose serious safety risks.



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

336. Defendants' conduct was unfair because it offends public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Defendants' concealment of serious safety defects that can cause severe burn injuries to consumers while marketing the Products as safe and reliable for carrying hot liquids offends established public policy protecting consumers from dangerous products.

337. Defendants' conduct was unfair because it caused substantial injury to Plaintiff Hernandez and California Subclass Members that they could not reasonably have avoided. The Defect is latent and concealed beneath other metal components, making it impossible for consumers to discover through reasonable inspection or normal use prior to handle failure.

338. The injury caused by Defendants' conduct is not outweighed by any countervailing benefits to consumers or competition. Consumers received defective Products that pose serious safety risks rather than the safe, reliable, durable thermos bottles they were promised and paid for.

339. Additionally, the warranty limitations and Defendants' failure to disclose the potential risk due to the Defect are unfair in that they: (1) violate public policy as expressed in the California Consumers Legal Remedies Act and California warranty laws; (2) are immoral, unethical, oppressive, and unscrupulous and substantially injurious to consumers; and (3) inflict injury on consumers which is not outweighed by any countervailing benefits to consumers or competition and the injury to consumers is one that consumers could not have reasonably avoided given the latent nature of the Defect.

**Reliance and Injury**

340. Plaintiff Hernandez and California Subclass Members reasonably and justifiably relied on Defendants' conduct alleged herein. Plaintiff Hernandez and California Subclass Members relied on Defendants' representations regarding the safety, durability, and reliability of the Products in making their purchase decisions.

341. But for Defendants' unlawful, unfair, and fraudulent conduct, Plaintiff Hernandez and California Subclass Members would not have purchased the Products at issue or would have



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

paid substantially less for them.

342. As a result of Defendants' conduct, Plaintiff Hernandez and California Subclass Members have suffered injury-in-fact and lost money, in that they paid for Products that were defective and posed serious safety risks rather than the safe, reliable, durable thermos bottles they were promised. Plaintiff Hernandez and California Subclass Members suffered economic loss at the point of sale due to the Defect and have incurred actual costs when the Defect manifested through handle failure, including medical expenses for treatment of burn injuries, property damage, and loss of the Products.

343. Plaintiff Hernandez and California Subclass Members seek to recover from Defendants restitution of earnings, profits, compensation, and benefits obtained as a result of the practices that are illegal under the UCL, disgorgement of all revenues derived from the sale of the defective Products, and injunctive relief prohibiting Defendants from continuing to engage in unlawful, unfair, and fraudulent business practices.

## EIGHTH CAUSE OF ACTION
## VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")
## CAL. BUS. & PROF. CODE §§ 17500, ET SEQ.
## (Plaintiff Hernandez Individually and on Behalf of the California Subclass)

344. Plaintiff Hernandez hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

345. The conduct described herein took place within the State of California and constitutes false or misleading advertising in violation of the FAL, Cal. Bus. & Prof. Code §§ 17500, *et seq*.

346. Pursuant to the FAL, "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

347. Defendants marketed, labeled, and represented the Products as merchantable and fit



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

for the ordinary purposes for which they were used and sold and as safe, durable, reliable, and suitable for carrying hot liquids.

348. More specifically, Defendants misrepresented, *inter alia*, that the Products were "durable and built to last," "safe for carrying hot liquids," "reliable for everyday use," "constructed with high-quality materials," "suitable for their intended purpose of beverage transport," and "free from defects in materials and workmanship."

349. Defendants represented that the handle assembly was designed for durability and reliable performance, when in fact the handle clips are constructed of 3mm wire with a 3.3mm gap at the top and are susceptible to progressive failure under ordinary use.

350. To the contrary, the Products contained the Defect at the time of purchase and no reasonable consumer would believe that, in light of the Defect, the Products were merchantable or fit for the ordinary purpose for which they were used and sold or were safe and suitable for carrying hot liquids.

351. The Products were not safe for their intended purpose because the handle clips progressively fail under ordinary use conditions, causing the handle to detach suddenly and without warning when consumers carry the Products filled with hot liquids.

352. At the time of its misrepresentations, Defendants were either aware of the Defect or were aware that they lacked the information and/or knowledge required to make such representations truthfully. Defendants concealed, omitted, and failed to disclose this information to Plaintiff Hernandez and California Subclass Members.

353. Defendants knew or should have known based on their engineering and design knowledge that handle clips constructed of 3mm wire with a 3.3mm gap would be susceptible to progressive failure under ordinary use conditions. Defendants knew or should have known that the Defect posed serious safety risks, while transporting hot liquids.

354. Defendants' knowledge of the Defect is further evidenced by the Collazo incident and other incidents of handle failure resulting in severe burn injuries to consumers. Despite this



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

knowledge, Defendants continued to make false and misleading representations about the safety, durability, and reliability of the Products.

355. Defendants made their misrepresentations and omissions with the intent to dispose of the Products. Defendants intended for consumers, including Plaintiff Hernandez and California Subclass Members, to purchase the Products in reliance on Defendants' false and misleading advertising regarding the Products' safety, durability, and reliability.

356. Defendants' descriptions of the Products were false, misleading, and likely to deceive Plaintiff Hernandez and other reasonable consumers into purchasing the Products, and further into not taking additional warranty or legal action after making warranty claims related to handle failures.

357. Defendants' conduct therefore constitutes false or misleading advertising in violation of Cal. Bus. & Prof. Code § 17500.

358. Plaintiff Hernandez has standing to pursue claims under the FAL as Plaintiff Hernandez reviewed and relied on Defendants' packaging, advertising, representations, and marketing materials regarding the Products when selecting and purchasing the Product.

359. In reliance on the statements made in Defendants' advertising and marketing materials and Defendants' omissions and concealment of material facts regarding the safety and quality of the Products, Plaintiff Hernandez and California Subclass Members purchased the Products.

360. Had Defendants disclosed the true nature of the Products (that they contained the Defect and posed serious safety risks), Plaintiff Hernandez and California Subclass Members would not have purchased the Products or would have paid substantially less for them.

361. As a direct and proximate result of Defendants' actions, as set forth herein, Defendants have ill-gotten gains and/or profits, including but not limited to money from Plaintiff Hernandez and California Subclass Members who paid for the Products, which contained the Defect.

362. Plaintiff Hernandez and California Subclass Members seek injunctive relief,



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

restitution, and disgorgement of any monies wrongfully acquired or retained by Defendants by means of their false or misleading representations, including monies already obtained from Plaintiff Hernandez and California Subclass Members as provided for by the FAL.

**NINTH CAUSE OF ACTION**
**VIOLATION OF THE NEW JERSEY**
**CONSUMER FRAUD ACT ("NJCFA")**
**N.J. Stat. §§ 56:8-1, ET SEQ.**
**(Plaintiff Davis Individually and on Behalf of the New Jersey Subclass)**

363. Plaintiff Davis hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

364. Defendants are each a "person," as defined by N.J. Stat. Ann. § 56:8-1(d).

365. Defendants sell "merchandise," as defined by N.J. Stat. Ann. § 56:8-1(c) & (e).

366. The New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1, *et seq.*, prohibits unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise. N.J. Stat. § 56:8-2.

367. Defendants misrepresented, *inter alia*, that the Products were "durable and built to last," "safe for carrying hot liquids," "reliable for everyday use," "constructed with high-quality materials," "suitable for their intended purpose of beverage transport," and "free from defects in materials and workmanship."

368. Defendants further represented that the handle assembly was designed for durability and reliable performance, when in fact the handle clips are constructed of 3mm wire with a 3.3mm gap at the top and are susceptible to progressive failure under ordinary use.

369. Defendants omitted and concealed that the Products were defective, were not safe for carrying hot liquids, would pose serious safety risks to Plaintiff Davis and New Jersey Subclass Members, were not of high-quality, could only be replaced with more defective Products, and have the propensity to fail suddenly and without warning, causing an unreasonable risk of injury when


BRYSON HARRIS SUCIU & DEMAY, PLLC
6212 Reitan Road NE
Bainbridge Island, WA 98110

handles detach while transporting hot beverages.

370. Defendants omitted and concealed that the Defect is latent and concealed beneath other metal components, rendering it unobservable to consumers during normal inspection, and that the thinness and material of the clip coupled with the gap in the connection allows the clip to continue widening and separating from the canister under reasonable and foreseeable pressure associated with transporting liquid in the thermos.

371. Defendants' employees and representatives made affirmative misrepresentations to Plaintiff Davis and New Jersey Subclass at the time of purchase, when consumers contacted Defendants to make warranty claims, and in responding to consumer complaints.

372. When consumers make warranty claims to Defendants regarding handle failures, Defendants conceal from consumers the fact that the handle detachment constitutes a defect, attributing failures to consumer misuse rather than design and manufacturing defects, failing to acknowledge the safety risks associated with handle failure, and providing inadequate remedies that do not address the underlying Defect.

373. Defendants are aware and cognizant that their representations that the Products work properly and are safe for carrying hot liquids are false and misleading and concealing the true condition of the Products.

374. Defendants acted intentionally, knowingly, and maliciously to violate NJCFA, and recklessly disregarded Davis and New Jersey Subclass Members' rights. Defendants were aware of the Defect from litigation and numerous consumer complaints.

375. Had Plaintiff Davis and New Jersey Subclass known of the concealed Defect, they would not have paid—or would have paid substantially less—for the Products at issue.

376. Defendants intended to mislead Plaintiff Davis and New Jersey Subclass Members and induced them to rely on its deceptive and fraudulent conduct, misrepresentations and omissions of material fact.

377. As a result of Defendants' unlawful conduct, Plaintiff Davis and putative New



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

Jersey Subclass were injured and suffered damages. Plaintiff Davis and New Jersey Subclass are entitled to all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

**TENTH CAUSE OF ACTION**
**VIOLATION OF THE NORTH CAROLINA**
**UNFAIR & DECEPTIVE TRADE PRACTICES ACT ("NCUDTPA")**
**N.C. GEN. STAT. § 75-1.1, ET SEQ.**
**(Plaintiff White Individually and on Behalf of the North Carolina Subclass)**

378. Plaintiff White hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

379. Defendants' foregoing acts and practices, including its omissions in the conduct of trade or commerce, were directed at consumers.

380. Defendants engaged in "commerce" as defined in N.C. Gen. Stat. § 75-1.1(b).

381. Defendants misrepresented, *inter alia*, that the Products were "durable and built to last," "safe for carrying hot liquids," "reliable for everyday use," "constructed with high-quality materials," "suitable for their intended purpose of beverage transport," and "free from defects in materials and workmanship."

382. Defendants further represented that the handle assembly was designed for durability and reliable performance, when in fact the handle clips are constructed of 3mm wire with a 3.3mm gap at the top and are susceptible to progressive failure under ordinary use.

383. Defendants omitted and concealed that the Products were defective, were not safe for carrying hot liquids, would pose serious safety risks to Plaintiff White and North Carolina Subclass Members, were not of high-quality, could only be replaced with more defective Products, and have the propensity to fail suddenly and without warning, causing an unreasonable risk of injury when handles detach while transporting hot beverages.

384. Defendants omitted and concealed that the Defect is latent and concealed beneath other metal components, rendering it unobservable to consumers during normal inspection, and that



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

the thinness and material of the clip coupled with the gap in the connection allows the clip to continue widening and separating from the canister under reasonable and foreseeable pressure associated with transporting liquid in the thermos.

385. Defendants' employees and representatives made affirmative misrepresentations to Plaintiff White and North Carolina Subclass at the time of purchase, when consumers contacted Defendants to make warranty claims, and in responding to consumer complaints.

386. When consumers make warranty claims to Defendants regarding handle failures, Defendants conceal from consumers the fact that the handle detachment constitutes a defect, attributing failures to consumer misuse rather than design and manufacturing defects, failing to acknowledge the safety risks associated with handle failure, and providing inadequate remedies that do not address the underlying Defect.

387. Defendants are aware and cognizant that their representations that the Products work properly and are safe for carrying hot liquids are false and misleading and concealing the true condition of the Products.

388. Defendants acted intentionally, knowingly, and maliciously to violate NJCFA, and recklessly disregarded Plaintiff White and North Carolina Subclass Members' rights. Defendants were aware of the Defect from litigation and numerous consumer complaints.

389. Had Plaintiff White and North Carolina Subclass Members' rights known of the concealed Defect, they would not have paid—or would have paid substantially less—for the Products at issue.

390. Defendants intended to mislead Plaintiff White and North Carolina Subclass Members' rights and induced them to rely on its deceptive and fraudulent conduct, misrepresentations and omissions of material fact.

391. Defendants' foregoing deceptive acts and practices, including its misrepresentations and omissions while engaged in business, were and are deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq*. as Plaintiff White and North Carolina



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

Subclass Members were deceived by Defendant's affirmative misrepresentations and material omissions regarding the quality of the Product and the underlying Defect.

392. In addition, Plaintiff White and North Carolina Subclass Members seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

## ELEVENTH CAUSE OF ACTION
## FRAUDULENT CONCEALMENT
**(Plaintiffs Hernandez, Davis, and White Individually and on Behalf of the Nationwide Class or, in the Alternative, the California, New Jersey, and North Carolina Subclasses)**

393. Plaintiffs hereby adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

394. Defendants knew or should have known that the Products were defective in design and manufacture, were not fit for their ordinary and intended use, and failed to perform in accordance with advertisements, marketing materials and warranties disseminated by Defendants, and with the reasonable expectations of ordinary consumers.

395. Defendants fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and Class Members that the Products are defective, that the handle clips are constructed of 3mm wire with a 3.3mm gap at the top and are susceptible to progressive failure under ordinary use, that the handle assembly would prematurely fail, and that the Products pose serious safety risks of injuries when handles detach during normal use while transporting hot liquids.

396. Defendants had exclusive knowledge of the defective nature of the Products at the time of sale and at all other relevant times. The Defect is latent and concealed beneath other metal components, and is not something that Plaintiffs or Class Members, in the exercise of reasonable diligence, could have discovered independently prior to purchase or during normal use.

397. Defendants had the capacity to, and did, deceive Plaintiffs and Class Members into believing that they were purchasing Products free from defects and safe for carrying hot liquids.

398. Defendants were under a duty to disclose the Defect to Plaintiffs and Class Members because: (a) Defendants possessed superior and exclusive knowledge of the Defect


**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

through their engineering expertise, product testing, and review of consumer complaints; (b) Defendants actively concealed the Defect by failing to disclose it in marketing materials and denying warranty claims; (c) Defendants made partial representations about the durability, safety, and reliability of the Products that were misleading without disclosure of the Defect; and (d) the Defect posed serious safety risks that reasonable consumers would consider material to their purchase decisions.

399. Defendants undertook active and ongoing steps to conceal the Defect. Plaintiffs and Class Members are not aware of anything in Defendants' advertising, publicity, or marketing materials that disclosed the truth about the Defect, despite Defendants' awareness of the problem through the Collazo incident and other consumer complaints.

400. When consumers made warranty claims to Defendants regarding handle failures, Defendants actively concealed the systematic nature of the Defect by denying that handle detachment constitutes a defect, attributing failures to consumer misuse rather than design and manufacturing defects, and failing to acknowledge the safety risks associated with handle failure.

401. The facts concealed and/or not disclosed by Defendants to Plaintiffs and Class Members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Products. The safety risks posed by the Defect, including severe burns from scalding hot liquids when handles detach unexpectedly, are material facts that would impact consumer purchase decisions.

402. Defendants intentionally concealed and/or failed to disclose material facts for the purpose of inducing Plaintiffs and Class Members to act thereon. Defendants knew that disclosing the Defect would negatively impact sales and harm their reputation as a manufacturer of premium, safe, and reliable thermos products.

403. Plaintiffs and Class Members were unaware of the concealed facts and could not have discovered them through reasonable diligence. The Defect is concealed beneath other metal components rendering it latent and unobservable, and the progressive nature of the failure means



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

that Products may initially appear to function properly before the clips widen sufficiently to cause sudden detachment.

404. Plaintiffs and Class Members justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchase of the Products in reliance on Defendants' representations that the Products were safe, durable, and reliable for carrying hot liquids.

405. Plaintiffs and Class Members suffered a loss of money and injury in an amount to be proven at trial, *inter alia*, as a result of Defendants' fraudulent concealment and nondisclosure because: (a) they would not have purchased the Products on the same terms if the true facts concerning the defective Products had been known; (b) they would not have paid a price premium for the Products if they knew of the Defect and that the Products were likely to fail suddenly, pose serious safety risks, and cause damage; and (c) the Products did not perform as promised.

406. Had Plaintiffs, Class Members, and the consuming public known that the Products were defective, posed serious safety risks, or would prematurely fail, they would not have purchased the Products or would have paid substantially less for them.

407. As a direct and proximate result of Defendants' fraudulent concealment, Plaintiffs and Class Members suffered damages, including loss of the benefit of the bargain, diminution in value, medical expenses for treatment of burn injuries, property damage, and consequential damages from personal injuries.

408. By reason of the foregoing, Plaintiffs and Class Members suffered, and continue to suffer damage and injury.

## TWELFTH CAUSE OF ACTION
## (IN THE ALTERNATIVE)
## UNJUST ENRICHMENT
**(Plaintiffs Hernandez, Davis, and White Individually and on Behalf of the or, in the California, New Jersey, and North Carolina Subclasses)**

409. Plaintiffs hereby adopt and incorporate by reference all foregoing allegations as though fully set forth herein.



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

410. This alternative claim is asserted on behalf of Plaintiffs and Class Members to the extent there is any determination that any contracts between Class Members and Defendants do not govern the subject matter of the disputes with Defendants, or that Plaintiffs do not have standing to assert any contractual claims against Defendants.

411. Plaintiffs and Class Members conferred a monetary benefit on Defendants, and Defendants had knowledge of this benefit and appreciated it. Plaintiffs and Class Members purchased the Products at a premium price point, with the average price paid for the Stanley Classic Products with clip handle assemblies ranging from $36.00 to $45.00 depending on size.

412. Plaintiffs and Class Members purchased the Products on the belief that they were purchasing safe, reliable, durable thermos products suitable for carrying hot liquids. However, the Products were not safe or reliable such that, *inter alia*, the Products contain the Defect preventing the Products from safely transporting beverages and liquid foods because the handle clips are susceptible to progressive failure, causing handles to detach unexpectedly, and fail.

413. Defendants omitted and concealed that the Products were defective, were not safe for carrying hot liquids, would pose serious safety risks to consumers, were not durable or built to last, could only be replaced with more defective Products, and would fail suddenly during normal use.

414. Plaintiffs and Class Members had no reason to know that the Products were defective because the Defect is latent and concealed beneath other metal components, and Defendants actively concealed the Defect through their marketing materials and warranty communications.

415. Defendants omitted and concealed that the Products were defective so that they could make increased profits from sales of premium-priced Products while avoiding the costs and reputational damage associated with disclosure, product recall, or redesign.

416. By their wrongful acts and omissions described herein, including selling the defective Products while concealing the Defect and failing to disclose serious safety risks,



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

Defendants were unjustly enriched at the expense of Plaintiffs and Class Members.

417. Defendants knowingly accepted and retained the unjust benefits of their misconduct under circumstances that make it inequitable for Defendants to retain the profits and benefits obtained from selling defective Products that pose serious safety risks while concealing the Defect from consumers.

418. Plaintiffs and Class Members' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct alleged in this Complaint.

419. Plaintiffs and Class Members were deprived of the benefit they conferred because they received defective Products that are not safe for their intended purpose of transporting liquids, that pose unreasonable safety risks, and that are worth substantially less than what they paid.

420. It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the defective Products while concealing the Defect and the serious safety risks from consumers.

421. Plaintiffs and Class Members seek restitution from Defendants and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct and establishing a constructive trust from which Plaintiffs and Class Members may seek restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

A. Certify the Nationwide Class and Subclasses pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Appoint Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

C. Enter judgment in favor of Plaintiffs and the Classes on all causes of action alleged herein;



**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6212 Reitan Road NE
Bainbridge Island, WA 98110

D. Award compensatory damages to Plaintiffs and the Classes, including economic damages, personal injury damages, and consequential damages, in an amount to be determined at trial;

E. Award statutory damages to Plaintiffs and the Subclasses under applicable state statutes;

F. Grant restitution to Plaintiffs and the Classes and require Defendants to disgorge their ill-gotten gains and profits;

G. Issue preliminary and permanent injunctive relief, including enjoining Defendants from continuing to sell the defective Products without disclosing the Defect, requiring Defendants to recall the Products or offer a full refund, and requiring corrective advertising;

H. Declare that Defendants' warranty limitations are unconscionable and unenforceable;

I. Award reasonable attorneys' fees and costs to Plaintiffs and the Classes pursuant to the various state statutes and under the common fund doctrine;

J. Award pre-judgment and post-judgment interest at the maximum legal rate to the extent provided by law; and

K. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: June 12, 2026.

Respectfully submitted,

/s/ *Andrew A. Lemmon*

Andrew A. Lemmon
**BRYSON HARRIS SUCIU & DEMAY, PLLC**
16212 Reitan Road NE
Bainbridge Island, Washington 98110
Telephone: (984) 257-5987

alemmon@brysonpllc.com

Harper T. Segui*
**LEE SEGUI PLLC**
825 Lowcountry Blvd., Suite 101
Mount Pleasant, SC 29464
Telephone: (843) 790-6520
hsegui@leesegui.com

Erin J. Ruben*
Thomas A. Pacheco
**LEE SEGUI PLLC**
900 W. Morgan St.
Raleigh, NC 27603
Telephone: (919) 421-7782
eruben@leesegui.com
tpacheco@leesegui.com

Daniel Bryson*
**BRYSON HARRIS SUCIU & DEMAY, PLLC**
900 W. Morgan St.
Raleigh, NC 27603
Telephone: (919) 815-4843
dbryson@brysonpllc.com

Ronald Rodriguez*
Ronald C. Rodriguez*
Athena A. Rodriguez*
**TEXAS PERSONAL INJURY EXPERTS, PLLC**
1609 Nueces Street
Austin, TX 78701
Telephone: (833) 300-0000
ron@ronaldrodriguez.com
rcr@ronaldrodriguez.com
athena@txpilaw.com

**Application for Admission Pro Hac Vice forthcoming*

*Attorneys for Plaintiffs and Proposed Classes*